Joseph A. MORRIS, Individually and on behalf of all similarly situated

v.

Caspar W. WEINBERGER, Secretary Department of Health, Education and Welfare, et al.

Civ. No. K–74–165.

United States District Court, D. Maryland.

June 19, 1975.

Supplemental Opinion Sept. 29, 1975.

C. Christopher Brown, Baltimore, Md., for plaintiff.

Jervis S. Finney, U. S. Atty., and Joseph M. Fairbanks, Asst. U. S. Atty., Baltimore, Md., Dorothy R. Fait, Atty., Social Security Division, Dept. of HEW, Baltimore Md., for defendant Weinberger.

Francis B. Burch, Atty. Gen., of Maryland and Paul Walter and William J. Rubin, Asst. Attys. Gen., for defendants Solomon, Pepper and Uhlfelder.

FRANK A. KAUFMAN, District Judge.

Morris seeks, on his own behalf and on behalf of several overlapping classes, injunctive and declaratory relief against the federal defendant and the state defendants herein. Further, Morris seeks the return of sums of money representing all or parts of payments made by the Social Security Administration (hereinafter referred to as "SSA") to the Secretary of the Maryland Department of Health and Mental Hygiene (hereinafter

referred to as "DHMH") as "representative payee" of Morris and one of the classes he seeks to represent.[1]

Morris has been a patient at a hospital operated by DHMH, the Spring Grove State Hospital, since July 12, 1972 when he voluntarily committed himself as a mental patient for the ninth time. On May 1, 1973, pursuant to an application filled out for Morris by DHMH, Morris was determined by SSA to be eligible for Social Security disability benefits retroactive to January 1, 1973. At the same time as DHMH filled out Morris' application for disability benefits, it also filled out an application for appointment as Morris' representative payee pursuant to 42 U.S.C. § 405(j).[2] On April 3, 1973, prior to its determination of May 1, 1973 that Morris was eligible to receive benefits, SSA determined that Morris "was incapable of handling his benefits in his own best interest" and certified the Secretary of DHMH as Morris' representative payee. During the period which the Secretary of DHMH served as Morris' representative payee, Morris' monthly benefit checks ranged from $213.30 to $228.30. All of those checks were made payable by SSA to the Secretary of DHMH as Morris' representative payee. During that May 1973 to May 1974 period, approximately $14.00 per month was paid by DHMH into Morris' hospital account for use by Morris for his personal needs. The entire remainder was applied by DHMH to pay the charges made by the hospital for Morris' then current care and maintenance. It would appear that the costs of each month's care and maintenance were reimbursed to DHMH

from the SSA benefits check issued during the following month.

On February 15, 1974, Morris instituted this action. On February 26, 1974, Morris filled out Form SSA–11, an application to be designated as his own payee. Subsequently, SSA found Morris to be capable of managing his own benefits. Accordingly, since June 1974, SSA has issued to Morris all of his monthly checks as his own payee.

William B. Watson seeks to intervene as of right in this action pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. In oral argument counsel for Watson asked in the alternative to intervene pursuant to Federal Civil Rule 24(b)(2). Watson has been a patient at Spring Grove State Hospital continuously since 1959 except for a few short "leaves". SSA on November 23, 1964 found Watson entitled to receive disability benefits based on a mental disability. At that time Watson's father was appointed representative payee for his son. Since Watson had and has no earnings record of his own, his benefits were and are based on his father's eligibility. For reasons which do not appear in the record Watson's father was ineligible for any Social Security benefits between 1964 and 1967. Accordingly, his benefits as his father's son were interrupted during that period. When the son again became eligible for benefits based on his father's renewed eligibility in November 1967, the father but not the son stated in writing that he would "prefer the hospital to file for him". Seemingly, the Secretary of DHMH became the *son*'s representative payee thereafter. On June 14, 1974, Watson,

---

1. Initially Morris sought the convening of a three-judge court to consider the constitutionality of those Maryland statutes pursuant to which patients are charged for care and maintenance provided in mental hospitals operated by the State of Maryland. *See* 5B Md.Ann. Code art. 59, §§ 39–47 (1972 Repl.Vol.). However, Morris has withdrawn that claim, without prejudice, leaving outstanding his contentions concerning the meaning and application of 42 U.S.C. § 407.

2. That section provides:
   (j) *Competency of applicant.* When it appears to the Secretary that the interest of an applicant entitled to a payment would be served thereby, certification of payment may be made, regardless of the legal competency or incompetency of the individual entitled thereto, either for direct payment to such applicant, or for his use and benefit to a relative or some other person.

the son, moved for leave to intervene in this action. On July 8, 1974, Watson, the son, applied to SSA to be selected as his own payee. On October 29, 1974 he was informed by SSA that his benefits as his father's son would shortly be paid to him as his own payee. Since December 1974, Watson, the son, in fact has been his own payee.

During the preparation of this opinion, well after the filing of this action and well after the receipt of Watson's motion to intervene, a motion to intervene in this case was filed on behalf of Charlie Jones. Jones would appear to be a member of the class certified *infra.* Accordingly, there would appear to be no need to resolve the question of whether Jones should be allowed to intervene as of right or otherwise in this action.

Although similar considerations may also be present in the case of the intervenor Watson, in view of the period of time that has elapsed since the latter's initial motion to intervene was filed herein and in view of the absence of any prejudice or delay caused by his intervention, his motion to intervene is hereby granted pursuant to Fed.R.Civ.P. 24(b)(2).[3]

Morris and intervenor Watson challenge the procedures employed by SSA (1) to determine incapability and (2) to select representative payees. Specifically, they contend that any person entitled to receive benefits has a right to have SSA conduct a hearing before SSA makes any lack of competency determination pursuant to 42 U.S.C. § 405(j)[4] and also has a right to have a hearing before SSA selects a representative payee. Since, as discussed *supra,* both Morris and Watson are presently their own payees, the question arises as to whether Morris and Watson lack standing at this time to challenge SSA's procedures regarding incapability and representative payee determinations or whether their respective challenges have become moot.

In *Indianapolis School Commissioners v. Jacobs,* 420 U.S. 128, 95 S.Ct. 848, 43 L. Ed.2d 74 (1975), in which six plaintiffs challenged certain regulations promulgated by the School Commissioners, the Supreme Court, in a per curiam opinion, wrote (420 U.S. at 129, 95 S.Ct. at 850, 43 L.Ed.2d at 77):

> * * * At oral argument, we were informed by counsel for petitioner that all of the named plaintiffs in the action had graduated from the Indianapolis school system; in these circumstances, it seems clear that a case or controversy no longer exists between the named plaintiffs and the petitioners with respect to the validity of the rules at issue. The case is therefore moot unless it was duly certified as a class action pursuant to Rule 23, Federal Rules of Civil Procedure, a controversy still exists between petitioners and the present members of the class, and the issue in controversy is such that it is capable of repetition yet evading review. *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532. Because in our view there was inadequate compliance with the requirements of Rule 23(c), we have concluded that the case has become moot.

In *Sosna v. Iowa,* 419 U.S. 393, 95 S. Ct. 553, 43 L.Ed.2d 532 (1975), the plaintiff was a wife whose divorce suit was dismissed by a court of the State of Iowa because she had not been a resident of that state for one year before she instituted such suit. The wife sought injunctive relief on behalf of herself and

---

3. That Rule provides in part:
   (b) *Permissive Intervention.* Upon timely application anyone may be permitted to intervene in an action: (1) * * *; (2) when an applicant's claim or defense and the main action have a question of law or fact in common. * * * In

exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

4. *See* n. 2 *supra.*

others similarly situated in an Iowa federal district court alleging that Iowa's residency requirement was unconstitutional. That federal court certified the case as a class action, and then rejected her said contention seemingly both before she had satisfied Iowa's one-year residency requirement before she obtained a divorce elsewhere. Mr. Justice Rehnquist wrote (419 U.S. at 399, 95 S. Ct. at 557, 43 L.Ed.2d at 540):

> If appellant had sued only on her own behalf, both the fact that she now satisfies the one-year residency requirement and the fact that she has obtained a divorce elsewhere would make this case moot and require dismissal. * * * But appellant brought this suit as a class action and sought to litigate the constitutionality of the durational residency requirement in a representative capacity. When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant.[8] We are of the view that this factor significantly affects the mootness determination. [Citations omitted.]

8. The certification of a suit as a class action has important consequences for the unnamed members of the class. If the suit proceeds to judgment on the merits, it is contemplated that the decision will bind all persons who have been found at the time of certification to be members of the class. Rule 23(c)(3); Advisory Committee Note, 39 F. R.D. 69, 105–106. Once the suit is certified as a class action, it may not be settled or dismissed without the approval of the court. Rule 23(e).

And later in his opinion, the Justice commented (419 U.S. at 402, 95 S.Ct. at 559, 43 L.Ed.2d at 542):

> Our conclusion that this case is not moot in no way detracts from the firmly established requirement that the judicial power of Art. III courts

extends only to "cases and controversies" specified in that Article. There must not only be a named plaintiff who has such a case or controversy at the time the complaint is filed, and at the time the class action is certified by the District Court pursuant to Rule 23,[11] but there must be a live controversy at the time this Court reviews the case. * * * The controversy may exist, however, between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot.

> In so holding, we disturb no principles established by our decisions with respect to class action litigation. A named plaintiff in a class action must show that the threat of injury in a case such as this is "real and immediate," not "conjectural" or "hypothetical." * * * A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the District Court * * * [Citations omitted; footnote 12 omitted.]

11. There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the District Court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back" to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

■■ It is not necessary to determine whether this case at this time more closely resembles *Jacobs* than *Sosna*. Herein, as of the date of this opinion, Morris and Watson each are stating a present grievance since each of them is threatened by the possible future application of the challenged SSA procedures if SSA should claim under section 405(j) that he has lost his competency. That alone may suffice to ward off mootness.[5] But in any event, the indi-

5. *See, e. g., Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972). *But see O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Golden v. Zwickler*, 394 U.S. 103, 109–10, 89 S.Ct. 956, 22 L.Ed. 2d 113 (1969).

vidual, personal claims of each of Morris and Watson for the return to them of their past disability benefits paid to DHMH as a representative payee selected for each of them by means of the challenged SSA procedures provides a substantial continuing controversy and renders both of their claims alive and non-moot. *Rhodes v. Weinberger,* 388 F.Supp. 437, 439 (E.D.Pa.1975).[6] It is the resolution of those monetary claims, in any event, which apparently poses the main controversy as of this date, since the SSA has informed this Court and counsel for Morris and Watson that the SSA has commenced the necessary steps to amend its procedures to enable each person entitled to SSA benefits to have the right to a hearing prior to any of his Social Security benefits being paid to a representative payee. Counsel for Morris and Watson have agreed, and seemingly appropriately so, that those changes, if and when they become effective, will provide to plaintiff Morris and to intervenor Watson, and to the class they desire to represent in connection therewith, the equitable relief they seek herein. Accordingly, their claims for such relief are hereby dismissed without prejudice and with the right of the named plaintiff, the intervenor and any member of the class hereinafter designated, to request this Court to entertain a quest for injunctive and declaratory relief herein after affording to the federal defendant a reasonable time period to bring into force and effect and to implement the proposed procedural changes, provided, however, any such re-

quest is made within a reasonable time after the Government announces such alleged change is in force and effect or within a reasonable time after the Government, after itself being afforded a reasonable time period as above set forth, fails so to do. *Cf. Richardson v. Wright,* 405 U.S. 208, 209, 92 SCt. 788, 31 L.Ed.2d 151 (1972).[7]

On the merits and stated simply, Morris' and Watson's claims in this case are that 42 U.S.C. § 407, as construed by a unanimous Supreme Court in *Philpott v. Essex County Welfare Board,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), provides that SSA may not designate a social security beneficiary's creditor as his representative payee pursuant to 42 U.S.C. § 405(j). Section 407 reads:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

For the same reasons as are developed in the *Philpott* opinion, Morris and Watson contend that it was wrongful for the state defendants, in their capacities as the beneficiaries' representative payees, to use those benefits to pay debts owed by those beneficiaries to the state or one of the state's agencies, or to the state as an entity. Morris and Watson assert

---

6. *Cf. Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Ash v. Cort,* 496 F.2d 416, 419–20 (3d Cir. 1974), *rev'd on other grounds,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). "Judicial action clearly has sufficient impact to avoid a mootness conclusion if there is a viable claim for damages. With a possible exception for nominal damages, damage claims should never be moot. \* \* \*" 13 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure: Jurisdiction § 3533 at 272–73 (1975)

7. The mootness as to plaintiffs' claims for equitable relief is only partial since the changes the federal defendant has stated it intends to implement have seemingly neither been entirely finalized nor implemented. Still, the good faith of the federal defendant is unchallenged; the expected effectiveness of the change in terms of curing any alleged past violation is unquestioned; and the character of such past violation, if any, is far from horrendous. *Compare United States v. W. T. Grant,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *Rhodes v. Weinberger,* 388 F.Supp. 437, 440–41 (E.D.Pa.1975).

that SSA may not confer upon a beneficiary's creditor a preferred position by appointing him representative payee and that additionally such a creditor may not use the benefits received by such creditor in its status as representative payee to pay the debts owed to it without obtaining the prior consent of the beneficiary himself.

■ Jurisdiction is asserted to exist in this case pursuant to 28 U.S.C. § 1361 which provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

In *Burnett v. Tolson,* 474 F.2d 877, 880 (4th Cir. 1973), Judge Craven wrote:

Mandamus is an ancient remedy, said to lie only to compel the fulfillment of a duty which is ministerial, plainly and positively ascertained, and free of doubt. *Prairie Band of Pottawatomie Tribe of Indians v. Udall,* 355 F.2d 364, 367 (10th Cir. 1966). These traditional requirements for invoking federal mandamus were concisely stated by the Fifth Circuit in *Carter v. Seamans,* 411 F.2d 767 (5th Cir. 1969), at 773:

Generally speaking, before the writ of mandamus may properly issue three elements must coexist: (1) a clear right in the plaintiff to the relief sought; (2) a clear duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available.

In *Seaton v. Texas Co.,* 103 U.S.App.D.C. 163, 256 F.2d 718, 723 (1958), Judge Fahy noted:

Some opinions state that the courts have authority to intervene when the duty of the executive officer is ministerial, in which event mandamus will lie. *United States ex rel. Barton v. Wilbur* [283 U.S. 414, 51 S.Ct. 502, 75 L.Ed. 1148 (1931)]; *Decatur v. Paulding* [39 U.S. 497, 14 Pet. 497, 10 L.Ed. 559 (1840)]; *Kendall v. United States,* 37 U.S. 524, 12 Pet. 524, 9 L.Ed. 1181 [(1838)]; *Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 [(1803)]. But the word "ministerial" is not sufficiently expressive to denote adequately every situation into which the courts may enter. Indeed, a duty often becomes ministerial only after a court has reached its own judgment about a disputable legal question and its application to a factual situation. *Lane v. Hoglund* [244 U.S. 174, 37 S.Ct. 558, 61 L.Ed. 1066 (1917)]. And see Professor Jaffe's discussion in The Right to Judicial Review I, 71 Harv.L.R. 401 (Jan. 1958). [Footnotes omitted.]

And in *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), in which subject matter jurisdiction was claimed under a predecessor of the current 28 U.S.C. § 1331, Mr. Justice Black stressed the need of a court in some situations to take jurisdiction in order to determine if it has jurisdiction. That approach, as Judge Fahy has indicated, would seem particularly appropriate in a mandamus action.

In *Mattern v. Weinberger,* 519 F.2d 150, at 156 (3rd Cir. 1975), Judge Hunter recently wrote

* * * The complexity and novelty of the issues on the merits, however, do not necessarily deprive the federal courts of mandamus jurisdiction. A determination with respect to jurisdiction involves a threshold inquiry into whether the plaintiff has alleged a cause of action under the particular jurisdictional statute. * * * [T]he duty alleged involves no element of discretion or room for judgment on the part of the Secretary, and if we agree with plaintiff's contention on the merits, the result will be to place the Secretary under a binding, non-discretionary duty to provide a prerecoupment oral hearing. Further-

more, the fact that the existence of the duty may become absolutely clear only after an interpretation of the due process clause and a consideration of the merits of the case does not deprive us of mandamus jurisdiction. See *Roberts v. United States,* 176 U.S. 221, 229–31, 20 S.Ct. 376, 44 L.Ed. 443 (1899); *Chaudoin v. Atkinson,* 494 F.2d 1323, 1330 (3d Cir., 1974); *Carey v. Local Board No. 2, Hartford, Connecticut,* 297 F.Supp. 252, 255 (D. Conn.), *aff'd per curiam,* 412 F.2d 71 (2d Cir., 1969). Acceptance of the Secretary's reasoning would lead to an oddly circular result—if mandamus jurisdiction were unavailable because, prior to ruling on the merits, the Secretary's duty is not clear, then a court would never have jurisdiction to determine *whether* his duty was clear in the first place.[13]   [Certain footnotes omitted; emphasis in original.]

13.  \* \* \* Jurisdiction depends on whether a plaintiff has *alleged* a cause of action, and if we rule in plaintiff's favor on the merits, \* \* \*.

See also *Rhodes v. Weinberger,* 388 F. Supp. 437, 443 (E.D.Pa.1975); *Brown v. Weinberger,* 382 F.Supp. 1092, 1095–97 (D.Md.1974), *appeal docketed,* Nos. 75–1138, 1139 (4th Cir. Feb. 5, 1975); *Dawson v. Weinberger,* Civil Action No. 72–C–146–R (W.D.Va. May 19, 1973),[8] *aff'd on other grounds because of mootness,* 490 F.2d 1407 (4th Cir. 1974).[9]

There remains the question of jurisdiction over the state defendants. Section 1361 speaks solely in terms of " \* \* \* an officer or employee of the United States or any agency thereof \* \* \* ." However, it may be that

---

8. A copy of the *Dawson* opinion has been placed in the official court file in this case.

9. Plaintiffs also claim jurisdiction exists herein pursuant to 28 U.S.C. § 1343(3), 28 U.S.C. § 1331 and 5 U.S.C. § 702.

As to § 1343 jurisdiction, plaintiffs contend that the state defendants, acting pursuant to 5B Md.Ann.Code art. 59, §§ 39–47 and regulations enacted thereunder, and the federal defendant acting in concert with the state defendants, together violated rights secured to plaintiffs by 42 U.S.C. § 407. Accordingly, the seeming basis of plaintiffs' § 1343(3) claim rests upon the Supremacy Clause. (Plaintiffs have not pressed herein any broader federal constitutional claims. *See* n. 1 *supra.*) Whether jurisdiction exists under § 1343(3) in connection with the Supremacy Clause challenge relating to a statutory right claimed under the Social Security Act is a question the Supreme Court has recently reserved. *Hagans v. Lavine,* 415 U.S. 528, 533–35 n. 5, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

As to § 1331 jurisdiction, the federal defendant contends that 42 U.S.C. § 405(h) bars any action brought under 28 U.S.C. § 1331 (the lineal descendant of section 24 of the Judicial Code). Section 405(h) provides:

*Finality of administrative determinations.* The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 24 of the Judicial Code of the United States to recover on any claim arising under this title.

That question also need not be resolved herein. *But see Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514, 520–21 nn. 8, 10 (1975); *Rhodes v. Weinberger, supra* at 442–43; *Gainville v. Richardson,* 319 F.Supp. 16, 18 (D.Mass.1970) (Wyzanski, C. J.).

As to section 10 of the APA, 5 U.S.C. § 702, that issue has seemingly not yet been resolved by the Supreme Court of the United States. *See Tooahnippah v. Hickel,* 397 U.S. 598, 604, 90 S.Ct. 1316, 25 L.Ed.2d 600 (1970); *White v. Bloomberg,* 345 F.Supp. 133, 140 n. 11 (D.Md.1972), and cases cited therein. *See also Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Note, *Jurisdiction to Review Federal Administrative Action: District Court or Court of Appeals,* 88 Harv.L.Rev. 980, 981 n. 13 (1975).

Since jurisdiction, at least over the federal defendant, exists in this case under § 1361, it is not necessary to decide the questions relating to the other claimed jurisdictional bases. As to jurisdiction over the state defendants, *see* the discussion *infra* in the body of this opinion.

once section 1361 jurisdiction attaches to a federal defendant, the state defendants may properly be joined under Federal Rule of Civil Procedure 19. *See Langevin v. Chenango Court, Inc.*, 447 F.2d 296, 300 (2d Cir. 1971) (Friendly, C. J.). *See also Paulsen v. Coachlight Apartments Co.*, 507 F.2d 401, 402 n. 1 (6th Cir. 1975); *Bloodworth v. Oxford Village Townhouses, Inc.*, 377 F.Supp. 709, 714 (N.D.Ga.1974). *But see Hahn v. Gottlieb*, 430 F.2d 1243, 1245 n. 1 (1st Cir. 1970). *And see* 7 C. Wright and A. Miller, Federal Practice and Procedure § 16.10 at 102–03 (1972). *See also* Fed. R.Civ.P. 82. Whether or not the state defendants are " \* \* \* Persons Needed for Just Adjudication" as those words are used in the caption of Rule 19 and whether or not jurisdiction exists herein as to them are questions which are better resolved after, not before, a consideration of the merits of this controversy and a decision as to what relief, if any, is appropriate. *Cf. Bell v. Hood, supra.* As of this date, the time for consideration and determination of the merits issues has not yet arrived, in the light of this Court's determination, *infra*, to certify a Federal Rule 23(b)(3) class and the need to permit notice to and opportunity for class members to be heard if they so desire. Accordingly, the issue of jurisdiction over the state defendants is hereby reserved for later decision.

Morris seeks to be designated as the representative of a class of all persons who have been, are now, or will be committed as in-patients in Maryland public mental health institutions and who have been or are now being or will be assessed charges or threatened with assessment of charges for their care and treatment in their mental health institution and who have been eligible, are eligible or will be eligible for Social Security benefits from the Social Security Administration and who have or have had DHMH as their representative payee.[10] Each of the requirements of Federal Civil Rule 23(a) are met.[11] Because Morris seeks payment of back benefits as well as prospective relief, the type of class action sought herein is provided for by Federal Civil Rule 23(b)(3).[12] As to that rule, its four tests are also met. Accordingly, this

10. The three words "or have had" were not in the description of this class in the original complaint. In response to an inquiry from this Court, counsel for plaintiffs indicated that those words had been inadvertently omitted and have moved to amend the complaint by interlineation. Counsel for defendants have stated that they do not object to such an amendment although they do continue to oppose the certification of any class herein. Since this amendment conforms to the parties' and this Court's understanding of the issues presented by this action and does not prejudice or unfairly surprise any party herein, the said motion to amend the complaint is hereby granted.

11. Fed.R.Civ.P. 23(a) provides:
*Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties

will fairly and adequately protect the interests of the class.

12. Fed.R.Civ.P. 23(b)(3) provides:
*Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
\* \* \* \* \*
the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Court hereby certifies the above defined class of plaintiffs pursuant to Fed.R. Civ.P. 23(b)(3), and asks counsel forthwith to submit a proposed Certification Order and appropriate notification documents. After such an Order is filed by this Court and all appropriate and necessary notice has been given and potential class members have been afforded their opting in or out rights pursuant to Fed. R.Civ.P. 23(c)(2),[13] this Court will hear further from all counsel with regard to the merits of plaintiffs' contentions.

## SUPPLEMENTAL OPINION

On June 19, 1975, this Court filed an opinion in which it held that jurisdiction existed pursuant to 28 U.S.C. § 1361 over the federal defendant[1] and in which a class of plaintiffs was certified pursuant to Fed.R.Civ.P. 23(b)(3).[2] Because 1361 jurisdiction was deemed present, this Court did not find it necessary to determine the presence, *vel non*, of jurisdiction over the federal defendant under 28 U.S.C. § 1331 and/or § 1343(3), and/or under 5 U.S.C. § 702.[3] Determination of the issue of jurisdiction over the state defendant was reserved for later decision.[4] Following the Supreme Court's decision in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), this Court requested and received from counsel memoranda, and also heard oral argument on the effect of that decision on this Court's jurisdiction and on the certification of the class.

*Salfi* involved the construction of 42 U.S.C. § 405(g) and (h). Those sections provide:

(g) Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.
\* \* \*

(h) The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter.

In *Salfi*, Mr. Justice Rehnquist wrote, *inter alia* (422 U.S. at 756, 95 S.Ct. at 2462, 45 L.Ed. at 534–36):
\* \* \* On its face, this provision [section 405(h)] bars district court federal question jurisdiction over suits, such as this one, which seek to recover Social Security benefits. Yet it was § 1331 jurisdiction which ap-

---

13. Fed.R.Civ.P. 23(c)(2) provides:
   *Determination by Order Whether Class Action to be Maintained; Notice; Judgment; Actions Conducted Partially as Class Actions.*
       \*      \*      \*      \*      \*
   In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him

from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

1. *See* pp. 1076–1078 therein.

2. *See* pp. 1078–1080 therein.

3. *See* p. 1078 n. 10 therein.

4. *See* p. 1078 therein.

pellees successfully invoked in the District Court. That court considered this provision, but concluded that it was inapplicable because it amounted to no more than a codification of the doctrine of exhaustion of administrative remedies. The District Court's reading of § 405(h) was, we think, entirely too narrow.

That the third sentence of § 405(h) is more than a codified requirement of administrative exhaustion is plain from its own language, which is sweeping and direct and which states that *no action shall be brought under* § 1331, not merely that only those actions shall be brought in which administrative remedies have been exhausted. Moreover, if the third sentence is construed to be nothing more than a requirement of administrative exhaustion, it would be superfluous. This is because the first two sentences of § 405(h) \* \* \* assure that administrative exhaustion will be required. Specifically, they prevent review of decisions of the Secretary save as provided in the Act, which provision is made in § 405(g). The latter section prescribes typical requirements for review of matters before an administrative agency, including administrative exhaustion. Thus the District Court's treatment of the third sentence of § 405(h) ignored not only that sentence's plain language, but also relegated it to a function which is already performed by other statutory provisions.

A somewhat more substantial argument that the third sentence of § 405(h) does not deprive the District Court of federal question jurisdiction relies on the fact that it only affects actions to recover on "any claim arising under [Title II]" of the Social Security Act. The argument is that the present action arises under the Constitution and not under Title II. It would of course be fruitless to contend that appellees' claim is one which does not arise under the Constitution, since their constitutional arguments are critical to their complaint. But it is just as fruitless to argue that this action does not also arise under the Social Security Act. For not only is it Social Security benefits which appellees seek to recover, but it is the Social Security Act which provides both the standing and the substantive basis for the presentation of their constitutional contentions. Appellees sought, and the District Court granted, a judgment directing the Secretary to pay Social Security benefits. To contend that such an action does not arise under the act whose benefits are sought is to ignore both the language and the substance of the complaint and judgment. This being so, the third sentence of § 405(h) precludes resort to federal question jurisdiction for the adjudication of appellees' constitutional contentions. [Footnotes omitted.]

Mr. Justice Rehnquist also commented (422 U.S. at 763, 95 S.Ct. at 2466, 45 L. Ed.2d at 537–39):

Section 405(g) specifies the following requirements for judicial review: (1) a final decision of the Secretary made after a hearing; (2) commencement of a civil action within 60 days after the mailing of notice of such decision (or within such further time as the Secretary may allow); and (3) filing of the action in an appropriate district court, in general that of the plaintiff's residence or principal place of business. The second and third of these requirements specify, respectively, a statute of limitations and appropriate venue. As such, they are waivable by the parties, and not having been timely raised below, see Fed. Rules Civ.Proc. 8(c), 12(h)(1), need not be considered here. We interpret the first requirement, however, to be central to the requisite grant of subject matter jurisdiction—the statute empowers district courts to review a particular type of decision by the Secretary, that type being those which are "final" and "made after a hearing."

\* \* \* \* \* \*

We have previously recognized that the doctrine of administrative exhaustion should be applied with a regard for the particular administrative scheme at issue. \* \* \* Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review. See, e. g., *McKart v. United States*, \* \* \* [395 U.S.] at 193–194 [89 S.Ct. 1657, at 1662–1663]. Plainly these purposes have been served once the Secretary has satisfied himself that the only issue is the constitutionality of a statutory requirement, a matter which is beyond his jurisdiction to determine, and that the claim is neither otherwise invalid nor cognizable under a different section of the Act. Once a benefit applicant has presented his or her claim at sufficiently high a level of review to satisfy the Secretary's administrative needs, further exhaustion would not merely be futile for the applicant, but would also be a commitment of administrative resources unsupported by any administrative or judicial interest.

\* \* \* The requirement [of a final decision] is \* \* \* something more than simply a codification of the judicially developed doctrine of exhaustion, and may not be dispensed with merely by a judicial conclusion of futility such as that made by the District Court here. But it is equally true that the requirement of a "final decision" contained in § 405(g) is not precisely analogous to the more classical jurisdictional requirements contained in such sections of Title 28 as 1331 and 1332. The term "final decision" is not only left undefined by the Act, but its meaning is left to the Secretary to flesh out by regulation.

Section 405(*l*) of the Act accords the Secretary complete authority to delegate his statutory duties to officers and employees of the Department of Health, Education, and Welfare. The statutory scheme is thus one in which the Secretary may specify such requirements for exhaustion as he deems serve his own interests in effective and efficient administration. While a court may not substitute its conclusion as to futility for the contrary conclusion of the Secretary, we believe it would be inconsistent with the congressional scheme to bar the Secretary from determining in particular cases that full exhaustion of internal review procedures is not necessary for a decision to be "final" within the language of § 405(g).

Much the same may be said about the statutory requirement that the Secretary's decision be made "after a hearing." Not only would a hearing be futile and wasteful, once the Secretary has determined that the only issue to be resolved is a matter of constitutional law concededly beyond his competence to decide, but the Secretary may, of course, award benefits without requiring a hearing. We do not understand the statute to prevent him from similarly determining in favor of the applicant, without a hearing, all issues with regard to eligibility save for one as to which he considers a hearing to be useless. [Footnote omitted.]

■ *Salfi* teaches that a prerequisite to the jurisdiction of this Court over the contentions herein of Morris, Watson and/or Jones is, with regard to each of the individual contentions of those claimants, a final decision as to each such contention, made by the Secretary after a hearing. While *Salfi* seemingly in no way precludes the Secretary from holding a consolidated hearing on those claims, it does require each of the claimants individually to exhaust his administrative remedies. Accordingly, the class designation set forth by this Court in

its June 19, 1975 opinion is hereby withdrawn. All three of Morris, Watson and Jones have the opportunity to seek individual administrative hearings and determinations by the Secretary as to their respective claims.[5] The contentions presented in this case by Morris, Watson and Jones raise issues of statutory construction[6] as well as perhaps factual issues. However, *Salfi* teaches that 405(h)'s jurisdictional preclusion is not limited to decisions of the Secretary on issues of law or fact, but (422 U.S. at 762, 95 S.Ct. at 2465, 45 L.Ed.2d at 536)

> [r]ather, it extends to any "action" seeking "to recover on any [Social Security] claim"—irrespective of whether resort to judicial processes is necessitated by discretionary decisions of the Secretary or by his nondiscretionary application of allegedly unconstitutional statutory restrictions.

*Salfi* holds that actions challenging the constitutionality of statutory restrictions are actions to "recover on any [Social Security] claim". The within challenges by Morris, Watson and Jones to the Secretary's procedures or regulations as unlawful under the statute are, it would seem, *a fortiori*, actions in pursuit of their respective Social Security claims.

The Secretary in his post-*Salfi* memorandum filed herein asserted that Morris "could still have appealed administratively the claim he now makes to this court—*i. e.*, that the Secretary of Health and Mental Hygiene should have never been appointed his payee and (since he was injured by that appointment) that the Defendant Secretary now owes him all monies previously sent to the State."[7] However, the availability of the administrative remedy is thereafter called into question by the Secretary himself in a footnote[8] in that memorandum. That footnote states:

> The defendant expresses no opinion at this time whether the "good cause" requirements of the Social Security Regulations (see 20 C.F.R. 404.953) regarding late requests for administrative review would not [sic] allow plaintiffs Morris and Watson to pursue review of their recent applications to be made their own payee or whether the "ood [sic] cause" regulations would permit review of any of the past applications of Morris, Watson, and Jones.

If the Secretary should subsequently determine that it is too late for Morris, Watson or Jones to obtain administrative review, that determination would appear to be a final decision permitting such applicant then to seek judicial review of his claim under section 405(g). In *Salfi*, Mr. Justice Rehnquist commented (422 U.S. at 764, 95 S.Ct. at 2466, 45 L.Ed.2d at 538–39) that the Secretary himself has the right to determine when he has made a final decision. Presumably, however, if the Secretary determines on a final basis not to reach the merits of a claim, that determination would be a final decision under section 405(g) within the meaning of *Salfi* and the individual whose claim has thus not been allowed may then appropriately seek federal district court review under sections 405(g) and (h) without offending the preclusionary provisions thereof as construed in *Salfi*.

As is noted *supra* at p. 1080, jurisdiction is also asserted to exist herein pur-

---

5. In its June 19, 1975 opinion this Court permitted Watson to intervene and did not permit Jones to intervene for reasons discussed therein at pp. 1073–1074. Those determinations seemingly are rendered meaningless by *Salfi*'s requirement of the pursuit by each individual claimant of his administrative remedy prior to seeking court review of the administrative determination as to his own respective claim.

6. No constitutional challenge is stated herein. *See* the June 19, 1975 opinion herein, p. 1073, n. 1.

7. *See* the Secretary's July 24, 1975 memorandum, p. 8, included in the official court file in this case.

8. *Id.* at p. 8 n. 5.

suant to section 10 of the APA, 5 U.S.C. §§ 701–04. As discussed in this Court's June 19, 1975 opinion, the issue of whether 5 U.S.C. §§ 701–04 provides an independent jurisdictional basis has not yet been resolved by the Supreme Court.[9] Actions which are made reviewable under section 704 are agency actions made reviewable by statute and final agency actions for which there is no other adequate remedy in a court. *Salfi* holds that the statute which authorizes judicial review of Social Security proceedings, that is, 42 U.S.C. § 405(g), requires that there first be exhaustion of administrative remedies. Neither Morris, Watson nor Jones has yet exhausted those remedies. Nor has there been with regard to the claims of any of those three persons final agency action since the Secretary has not yet been given the opportunity to act upon their contentions that the appointments of representative payees were wrongful and that monies previously paid to an agency of the State of Maryland should be paid now to each of them. Therefore, even if 5 U.S.C. § 704 does provide an independent jurisdictional base—an issue which this Court does not need to reach herein —— [10] that base would not be available in this case at this time.

■ *Salfi* makes it completely clear that jurisdiction under 28 U.S.C. § 1331 with respect to the claims of Morris, Watson and Jones is barred by 42 U.S.C. § 405(h) as actions to recover on claims arising under the Social Security Act brought under what was, until 1948, section 41 of Title 28. The jurisdictional provisions referred to in section 41 include, *inter alia*, present sections 1331–48, 1350–57, and 1359 of Title 28. Accordingly, section 1343(3), as well as section 1331, falls within section 405(h)'s jurisdictional stricture. But herein jurisdiction is asserted and has in this Court's June 19, 1975 opinion

been determined, at least initially, to exist under 28 U.S.C. § 1361. That section provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

To begin with, it must be noted that section 1361 is not expressly precluded as a basis for jurisdiction by 42 U.S.C. § 405(h) since section 405(h) prohibits only actions brought under what was section 41 of Title 28 until the 1948 revised judicial code. Section 1361 was obviously not included in 1948 or before in section 41 as section 1361 was not enacted until 1962. *Salfi* does not discuss section 1361, and provides no direct guidance. Yet *Salfi* would appear to be an exercise in futility if plaintiff-claimants could circumvent the exhaustion requirements of section 405(h) simply by bringing suit under section 1361. Surely, at a minimum, *Salfi* would seem to suggest strongly that if this Court has mandamus jurisdiction, this Court should exercise its discretion to dismiss this case for failure to exhaust administrative remedies. Accordingly, this Court, exercising that discretion, hereby dismisses the within claims of Morris and Watson—and Jones—against the federal defendant, without prejudice to the rights of one or more or all of those three persons to apply for judicial review after exhausting the administrative process.[11] The said three claims are also .dismissed without prejudice as to the state defendants. In its June 19, 1975 opinion, this Court did not resolve the jurisdictional issues with regard to the state defendants.[12] At this time, it would appear to serve no purpose for this Court to continue to entertain the action against the state defendants alone, assuming *arguendo* only that ju-

9. *See* p. 1080 n. 3 *supra.*

10. *Id.*

11. The procedures for so doing are set forth in the Secretary's July 24, 1975 memorandum filed herein.

12. *See* n. 4 *supra.*

risdiction so to do is present, since full and fair adjudication of all issues—jurisdictional and substantive—can best take place, and in any event must necessarily await final decision by the Secretary, after full exhaustion of administrative remedies.

Judgment in accordance with the above will therefore today be entered for defendants and each of them.