## PHILPOTT ET AL. *v.* ESSEX COUNTY WELFARE BOARD

No. 71–5656.   Argued December 4, 1972—Decided January 10, 1973

DOUGLAS, J., delivered the opinion for a unanimous Court.

*George Charles Bruno* argued the cause and filed a brief for petitioners.

*Ronald Reichstein* argued the cause for respondent. With him on the brief was *Joseph E. Cohen.*

*Solicitor General Griswold, Deputy Solicitor General Friedman, Keith A. Jones, Wilmot R. Hastings, Edwin Yourman,* and *Arthur Abraham* filed a brief for the United States as *amicus curiae* urging reversal.

*George F. Kugler, Jr.,* Attorney General, *Stephen Skillman,* Assistant Attorney General, and *Joan W. Murphy,* Deputy Attorney General, filed a brief for the State of New Jersey as *amicus curiae* urging affirmance.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Wilkes,[1] one of the petitioners, applied to respondent, one of New Jersey's welfare agencies, for financial as-

---

[1] The payment in controversy is in a bank account under the name of petitioner Philpott in trust for Wilkes.

sistance based upon need by reason of permanent and total disability. As a condition of receiving assistance, a recipient is required by New Jersey law to execute an agreement to reimburse the county welfare board for all payments received thereunder.[2] The purpose apparently is to enable the board to obtain reimbursement out of subsequently discovered or acquired real and personal property of the recipient.

Wilkes applied to respondent for such assistance in 1966 and he executed the required agreement. Respondent determined Wilkes' monthly maintenance needs to be $108; and, finding that he had no other income, respondent fixed the monthly benefits at that amount and began making assistance payments, no later than January 1, 1967. The payments would have been less if Wilkes had been receiving federal disability insurance benefits under the Social Security Act, and respondent advised him to apply for those federal benefits.

In 1968 Wilkes was awarded retroactive disability insurance benefits under § 223 of the Social Security Act, 70 Stat. 815, as amended, 42 U. S. C. § 423, covering the period from May 1966 into the summer of 1968. Those benefits, calculated on the basis of $69.60 per month for 20 months and $78.20 per month for six months,

---

[2] N. J. Stat. Ann. § 44:7–14 (a) (Supp. 1972–1973) provides: "Every county welfare board shall require, as a condition to granting assistance in any case, that all or any part of the property, either real or personal, of a person applying for old age assistance, be pledged to said county welfare board as a guaranty for the reimbursement of the funds so granted as old age assistance pursuant to the provisions of this chapter. The county welfare board shall take from each applicant a properly acknowledged agreement to reimburse for all advances granted, and pursuant to such agreement, said applicant shall assign to the welfare board, as collateral security for such advances, all or any part of his personal property as the board shall specify."

amounted to $1,864.20. A check in that amount was deposited in the account which Philpott holds as trustee for Wilkes. Under New Jersey law, we are told, the filing of a notice of such a reimbursement agreement has the same force and effect as a judgment. 59 N. J. 75, 80, 279 A. 2d 806, 809.

Respondent sued to reach the bank account under the agreement to reimburse. The trial court held that respondent was barred by the Social Security Act, 49 Stat. 624, as amended, 42 U. S. C. § 407, from recovering any amount from the account.[3] 104 N. J. Super. 280, 249 A. 2d 639. The Appellate Division affirmed. 109 N. J. Super. 48, 262 A. 2d 227. The Supreme Court reversed.[4] 59 N. J. 75, 279 A. 2d 806. The case is here on a petition for a writ of certiorari which we granted. 406 U. S. 917.

On its face, the Social Security Act in § 407 bars the State of New Jersey from reaching the federal disability payments paid to Wilkes. The language is all-inclusive:[5] "[N]one of the moneys paid or payable . . . under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process . . . ." The

---

[3] Title 42 U. S. C. § 407 provides:

"The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

[4] Since respondent did not claim a right to the entire federal payment but only to the amount by which its own payments would have been reduced had the federal benefits been received currently rather than retroactively and because the stipulated facts were ambiguous as to when respondent actually began making assistance payments, the court remanded for a determination of the precise amount of respondent's claim.

[5] *Supra,* n. 3.

moneys paid as retroactive benefits were "moneys paid . . . under this subchapter"; and the suit brought was an attempt to subject the money to "levy, attachment . . . or other legal process."

New Jersey argues that if the amount of social security benefits received from the Federal Government had been made monthly, the amount of state welfare benefits could have been reduced by the amount of the federal grant. We see no reason to base an implied exemption from § 407 on that ground. We see no reason why a State, performing its statutory duty to take care of the needy, should be in a preferred position as compared with any other creditor. Indeed, since the Federal Government provides one-half of the funds for assistance under the New Jersey program of disability relief, the State, concededly, on recovery of any sums by way of reimbursement, would have to account to the Federal Government for the latter's share.

The protection afforded by § 407 is to "moneys paid" and we think the analogy to veterans' benefits exemptions which we reviewed in *Porter* v. *Aetna Casualty Co.,* 370 U. S. 159, is relevant here. We held in that case that veterans' benefits deposited in a savings and loan association on behalf of a veteran retained the "quality of moneys" and had not become a permanent investment. *Id.,* at 161–162.

In the present case, as in *Porter,* the funds on deposit were readily withdrawable and retained the quality of "moneys" within the purview of § 407. The Supreme Court of New Jersey referred to cases [6] where a State which has provided care and maintenance to an incompetent veteran at times is a "creditor" for purposes of

---

[6] See *Savoid* v. *District of Columbia,* 110 U. S. App. D. C. 39, 288 F. 2d 851; *District of Columbia* v. *Reilly,* 102 U. S. App. D. C. 9, 249 F. 2d 524. See decision below, 59 N. J. 75, 85, 279 A. 2d 806, 812.

38 U. S. C. § 3101, and at other times is not. But § 407 does not refer to any "claim of creditors"; it imposes a broad bar against the use of any legal process to reach all social security benefits. That is broad enough to include all claimants, including a State.

The New Jersey court also relied on 42 U. S. C. § 404, a provision of the Social Security Act which permits the Secretary to recover overpayments of old age, survivors, or disability insurance benefits. But there has been no overpayment of federal disability benefits here and the Secretary is not seeking any recovery here. And the Solicitor General, speaking for the Secretary, concedes that the pecuniary interest of the United States in the outcome of this case, which would be its aliquot share of any recovery, is not within the ambit of § 404.

By reason of the Supremacy Clause the judgment below is

*Reversed.*