Edith Good, Appellant, *v.* Helene Wohlgemuth, Secretary of Department of Public Welfare, Commonwealth of Pennsylvania, Appellee.

Argued September 4, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Eugene F. Zenobi,* with him *Alan Linder* and *J. Richard Gray,* for appellant.

*Darius G. C. Moss,* Assistant Attorney General, with him *Max S. Leopold,* General Counsel, for appellee.

OPINION BY JUDGE ROGERS, October 25, 1974:

This is the appeal by Edith S. Good from an adjudication of the Department of Welfare dismissing her appeal from the action of the Lancaster County Board of Assistance denying her claim to the sum of $2630.70, allegedly wrongfully collected from her by a caseworker of the County Board.

The facts are set forth in the adjudication of the hearing examiner of the Department of Welfare as follows:

"Edith Good is a widow. On December 9, 1970, while her husband was living, they applied for assistance. It was set up effective December 10, 1970, supplementing Mrs. Good's Social Security. Mr. Good died on May 28, 1971. Mrs. Good continued on Welfare.

"On August 31, 1972, Mrs. Good received a lump sum Social Security check in the amount of $3,886.30.[1] This check represented Social Security benefits to her husband which, through an error, were not paid to him during his lifetime. The Board of Assistance learned that this money was coming to Mrs. Good and they contacted her a number of times about it, warning her not to cash the check and spend the money.

---

[1] Although these benefits would have been paid to her husband had he survived, they were paid to Mrs. Good as surviving spouse by the specific authorization of Section 204(d)(1) of the Social Security Act, 49 Stat. 624, *as amended,* 42 U.S.C. §404(d)(1).

"On the day she received the check, a caseworker called her and, ascertaining that the check was in her hands, told her to do nothing with it until she (the caseworker) could come out and drive her to the Bank.

"She did this. Mrs. Good was upset emotionally. Since she is a cardiac case, she was in a precarious physical condition.

"Both women appeared at the teller's window at the Bank. The caseworker called the Board of Assistance to get the exact amount owing and then the check was cashed. The caseworker took $2,564.20 for the Board and the balance was retained by Mrs. Good.

"Subsequently, on September 21, 1972, Mrs. Good returned her assistance check in the amount of $66.50. The total amount with which we are concerned is $2,630.70."

The parties, Mrs. Good and the Department of Welfare, expended most of their effort in brief and argument here discussing the applicability to the facts of this case of Section 207 of the Social Security Act,[2] and the effect of the holding of *Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973).

Section 207 of the Social Security Act provides: "The right of any person to any future payment under this title chapter shall not be transferable or assignable, at law or in equity, and none of the monies paid or payable or rights existing under this sub-chapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

*Philpott v. Essex County Welfare Board, supra,* held that Section 207 barred the state welfare agency as another creditor from subjecting money received by a welfare recipient as retroactive disability insurance benefits under the Social Security Act to levy, attach-

---

[2] 49 Stat. 624, *as amended*, 42 U.S.C. §407.

ment or other legal process for reimbursement of public assistance payments. The appellant insists that the actions of the caseworker in this case were, or were tantamount to, legal process and that the *Philpott* decision, which came down after the actions of the caseworker complained of, should be given retroactive effect. Since we are deciding the case in favor of the appellant on other grounds we need not indulge in an extended discussion of either the applicability or the effect of *Philpott v. Essex County Welfare Board, supra,* beyond stating that in our judgment the actions of the caseworker in demanding and collecting reimbursement were not, in our view, "legal process" and that the *Philpott* holding appears to us to follow from Section 207 wholly naturally. On the latter point, the Department of Welfare has apparently considered itself excluded from the limitations of Section 207 and seems to have been surprised by *Philpott*.[3] However, it has been clearly law that the Commonwealth, as claimant for reimbursement of public assistance payments, is merely a common creditor. *Cemini Estate,* 22 Pa. D. & C. 2d 556 (1960) ; *Kerchner Estate,* 33 Pa. D. & C. 2d 674 (1964). As such, it seems to us unremarkable that the Commonwealth, as any other creditor, would be subject to the strictures of 207 of the Social Security Act, and that is all *Philpott* holds.

---

[3] As a result of *Philpott,* the Department issued its Public Assistance Memorandum No. 650, Supplement No. 636, instructing its employes that delayed social security benefits were no longer subject to the reach of the Department by legal action. This is an accurate statement of the holding of *Philpott*. The memorandum continues, however, by declaring that such benefits are not subject to reimbursement generally but shall be treated as income when received. If the memorandum is intended to convey the idea that the receipt of such benefits may not affect decisions of eligibility or continued eligibility or of the amount of assistance or that the Department may not ask reimbursement therefrom by fair means other than legal process, we venture to declare that this is not our understanding of *Philpott*.

The flaw in the Department of Welfare's case is that the caseworker's collection of reimbursement from Mrs. Good was in contravention of the Department's own rules and regulations. The properly authorized rules and regulations of an administrative agency have the force and effect of law and bind the agency equally with others. *School District 2 Fractional v. United States,* 229 F. 2d 681 (6th Cir. 1956); *United States ex rel. Caputo v. Sharp,* 286 F. Supp. 516 (E.D. Pa. 1968). The Department of Welfare's regulations clearly prohibit a County Board of Assistance, to whom the caseworker here was attached and for whom she was acting, from collecting or attempting to collect money from welfare recipients in reimbursement and place this responsibility with the Claim Settlement Division of the Area Office.[4] The regulations are:

"3824  *Collection of Reimbursement*

"The Area Office is responsible for collecting reimbursement except as provided in 3824.1 . . . .

. . . .

"Reimbursement may be accomplished in one of two ways; either by reduction of grants (see 3824.1) or by payment to Claim Settlement (see 3824.2).

"3824.1  *Reimbursement by Reduction of Grant—Optional Method*

"Reimbursement may be made by reduction of assistance that would otherwise be granted when money subject to reimbursement is received in an amount equal to or less than one month's grant to the assistance unit . . . .

"3824.2  *Reimbursement by Payment*

"The County Office should not compute or attempt to settle reimbursement claims except as provided in

---

[4] The Area Office for the Lancaster County Board is located in Harrisburg.

3824.1. However, it should accept payment if the debtor has the money and offers repayment. The payer is informed that the money is on account and will be forwarded to the Area Office where the exact amount of the claim will be determined . . . .

## "3825  *Reimbursement Responsibilities*

"Responsibility for action necessary for protection and collection of the Commonwealth's reimbursement claims is divided between the Department and the County Offices. The County Office has responsibility for taking certain preliminary action to secure the Commonwealth's right to reimbursement. In addition it cooperates with the Claim Settlement Division in the collection of reimbursement.

"The Department's Claim Settlement Division, through its Area Offices, has the ultimate responsibility for insuring that necessary action is taken to protect the Commonwealth's interests, and to collect or settle all claims.

## "3825.1  *Reimbursement Responsibilities of the County Office*

"The reimbursement responsibilities of the County Office are:

. . . .

"d. To record liability for reimbursement so that referral can be made to the Area Office for collection or other action.

"e. To furnish the Area Office with information necessary to collect reimbursement.

. . . .

"g. To refer to the Area Office

"(a) all reimbursement claims not collectible by reduction in grant;

"(b) all offers of reimbursement;

. . . .

"h. To accept payment of reimbursement claims in accordance with 3824.

"3825.3 *Reimbursement Responsibilities of the Claim Settlement Division*

"The reimbursement responsibilities of the Claim Settlement Division are:

"a. To determine the amount of every reimbursement claim.

"b. To maintain records of all reimbursement claims.

"c. To collect reimbursement.

"d. To take necessary legal or other action to protect, collect or settle reimbursement claims.

"e. To advise the County Office on questions of law and legal procedure regarding property ownership as it affects reimbursement.

"f. To notify the County Office of the final disposition of each reimbursement claim.

"3823 *Referral for Reimbursement*

"In general, the County Office submits a Reimbursement Referral, DPA Form 173-S whenever action by the Area Office is necessary to protect or collect the claim . . . .

. . . .

"A reimbursement referral must always be made in the following situations . . . .

. . . .

"c. Assets Converted to Cash

. . . .

"Delayed payments are received and adjustment to the grant cannot be made in accordance with 3824.1.

. . . .

"e. Requests or Offers

"Reimbursement is offered by the property owner, or someone acting on his behalf, or by a person purchasing the property.

. . . ."

It will be noted that the regulations do authorize the County Board to accept payment if the debtor has the money and offers repayment. On the other hand, it is the Claims Settlement Division of the Area Office which has the responsibility for collecting. The caseworker here clearly did not merely accept an offer of payment; she collected reimbursement.[5]

The appellant makes several other weighty arguments, each of which in view of the result here, we need not discuss. Upon a careful consideration of the Code of Federal Regulations and particularly Title 45, Section 205.10, we have concluded that her contention that she was entitled to a hearing prior to collection action for reimbursement is unmeritorious. The caseworker's effort to collect an undoubted indebtedness, howbeit violative of the Department's regulations, was not an action affecting the appellant's claim for assistance.

We have also carefully considered the Department's contention that the appeal to it was untimely under its regulations and found it to be without merit in the circumstances of this case.

---

[5] The caseworker did not testify at the hearing because of illness. Counsel for the Department of Welfare chose not to pursue the Hearing Examiner's suggestion that the hearing be continued for her appearance or that her deposition be taken. The Examiner's findings, reproduced herein are, therefore, based on the appellant's testimony. We note at this place that without doubt the welfare caseworker's lot, like the policeman's, is not a happy one. When he recommends the grant of assistance he is accused of playing wastrel with public funds and when he attempts to collect what is due the Commonwealth in reimbursement he is called a "Simon Legree," the term actually employed for this purpose in appellant's brief.

**532**

## ORDER

AND NOW, this 25th day of October, 1974, the appeal of Edith S. Good is sustained and the adjudication of the Department of Welfare made November 26, 1973 is set aside and the record remanded with the direction that the Department of Welfare return to the appellant the sum of $2630.70.[6]

---

[6] This includes $66.50 which Mrs. Good sent to the Department some days after the transaction at the bank. The amount is small and further it seems to us that its payment should be considered with and as a mere sequel to the earlier payment.