Helene Wohlgemuth, Secretary of Public Welfare, Department of Public Welfare, Commonwealth of Pennsylvania, Appellee, v. Helen Armacost, Appellant.

Argued March 6, 1975, before Judges CRUMLISH, JR., KRAMER and ROGERS, sitting as a panel of three.

*Alan Linder*, with him *Stuart S. Sacks*, for appellant.

*Harold Dunbar*, Assistant Attorney General, with him *Marx S. Leopold*, Assistant Attorney General, and *Israel Packel*, Attorney General, for appellee.

OPINION BY JUDGE KRAMER, April 22, 1975:

This is an appeal by Helen L. Armacost (Armacost) from an order of a hearing examiner of the Department of Public Welfare (Department), dated June 17, 1974, which denied her request for a refund of monies paid by her to the Department.

From October 8, 1970, until July 25, 1973, Armacost received public assistance. On July 16, 1973, Armacost received a check from the Social Security Administration for $711.60, representing a lump-sum payment of retroactive widow's survivor's benefits. At some point during the time she was receiving public assistance, Armacost signed a "PA176-K" form, described in the record as an "agreement to pay claim." Although this form was not entered into evidence at Armacost's hearing, we gather, from various memoranda which were admitted, that this document obligates the recipient of public assistance to repay the Department for assistance given, if the recipient subsequently acquires money or property.

The record establishes that after receiving the check, Armacost called the local office of the Department and reported the fact of receipt. The record also shows that Armacost "understood" that she "was to pay back that money." The Department's Claims Settlement Division sent a representative to Armacost's home on July 20, 1973, and he accepted her personal check for $330.70, the amount the hearing examiner found was *"deemed to be due from her"* by the cognizant Claims Settlement Division Office." (Emphasis added.) The record is silent as to the approach taken by the official who visited Armacost at home.

On December 10, 1973, personnel of the local office of the Department received a memorandum from one of their superiors advising them that, in light of *Philpott v. Essex County Welfare Board,* 409 U.S. 413, decided January 10, 1973, the Department was no longer legally entitled to collect lump sum social security payments (such as the one received by Armacost). The memorandum further instructed them to advise clients of the Department of their "right of appeal and request for refund" if reimbursement had been made after January 10, 1973. Pursuant to this memorandum, Armacost was notified of *Philpott's* possible effect. On December 14,

1973, Armacost advised the local Department office that she was requesting an appeal to obtain a refund of the $330.70, plus interest from July 20, 1973.

There are two questions presented by this appeal, the first of which is a threshold determination regarding the timeliness of Armacost's initial request for a refund. While it is true that almost five months elapsed between Armacost's payment and the notice of appeal, there are unusual features present in this case which militate in favor of a finding of timeliness. First, we point out that Department regulation 3590.1 reads as follows:

"An applicant or recipient must exercise his right of appeal within the following time limits:

"a. Thirty (30) days from the date of written notice (PA 162, PA 162-A or PA 162-C) of a County Assistance Office decision or action.

"b. *Sixty (60) days from the date of any decision or action by the County Assistance Office when the County Office failed to send written notice, or 60 days from the failure of the County Assistance Office to act. The cause of the grievance must have occurred within 60 days prior to the date of the appeal.*

"*Appeals which do not meet the above time limitations will be dismissed without a hearing.*" (Emphasis added.)

The record is devoid of any evidence indicating that Armacost received any notice from the Department that her payment may not have been required, other than the notice which was obviously given sometime between December 10 and 14, 1973.

In light of the above-quoted regulation, we are at a loss to determine what decision or action the Department would have us deem to be the source of the "grievance," other than the notice of an appeal right communicated to Armacost in December. It seems clear that the facts of this case were not contemplated by that portion of regulation 3590.1 which requires that "[t]he cause

of the grievance must have occurred within 60 days prior to the date of the appeal," and it would be manifestly unfair to require the Armacost be aware of the possible implications of *Philpott* when the Department's own personnel were unaware of its effect and, in fact, had advised Armacost that she could pursue a refund.

Interestingly, there is evidence in the record that even relatively high officials in the Department were uncertain about the proper procedure. The December 10, 1973 memo which prompted the advice to Armacost was issued by an individual with the title "Public Welfare Administrator IV, Policy Division." This memo was revoked eight days later by a second memorandum which advised local personnel that the December 10 memo was "in error" with regard to its statement that people such as Armacost who had already paid a reimbursement, were entitled to refunds.

We also note that while the regulation appears to speak in mandatory language when it says that "[a]ppeals which do not meet the . . . time limitations will be dismissed without a hearing," the Department itself granted a full hearing on the merits, and the Department's representatives made no objection to the timeliness of Armacost's appeal. In fact, the record reveals that not only was Armacost encouraged to appeal after the December 10 memorandum was received, but that a conscious decision not to oppose the right to appeal was made after the corrective memorandum of December 18 was received by the local officials. This action was described at the hearing by a Department representative who explained that the local office "did not see anything with reason to try to abort the appeal."

We are not dealing here with a situation where a citizen is awaiting action by the Department of which notice can be expected. Nor are we dealing with a situation in which inaction should put an individual on notice that further action on his or her part might be

warranted. Armacost did everything that could be expected of her under the circumstances, and the examiner's conclusion that Armacost's appeal was not timely is in error. The statutory and constitutional requirements of due process of law and a fair opportunity to be heard cannot be derrogated because of confusion and misinformation within an agency of the government.

Turning to the merits of the case, the Department argues that *Philpott, supra,* only held that payments such as the one involved in the instant case are immune from legal process. We agree with this interpretation of *Philpott,* as we noted in *Good v. Wohlgemuth,* 15 Pa. Commonwealth Ct. 524, 327 A.2d 397 (1974). In *Good* Judge ROGERS observed that *Philpott* does not bar the Department from asking for reimbursement by fair means other than legal process, and, of course, a subsequent complaint to a truly voluntary repayment would be without merit.

The problem with the instant case is that we doubt that Armacost's payment was truly voluntary. There is no doubt that, as a result of *Philpott,* after January 10 1973, the Department was legally unable to hold Armacost to her agreement to repay, to the extent that such repayment might be made from her social security benefits. Not knowing about *Philpott,* Armacost very commendably contacted the Department in July and communicated her understanding that she "was to pay back that money." The Department promptly dispatched an officer to collect the money and no one ever bothered to inform Armacost that she was no longer under any legal obligation to repay from the social security funds. We find it difficult to believe that the Claims Settlement Division officer who visited Armacost to collect the money did not know that the Department's right to receive it was questionable at best. If he and the other Department officials who dealt with Armacost were not aware of *Philpott* they certainly should have been, yet no one informed her that the agreement which she had signed

when she began receiving public assistance was not binding upon her as to these funds. Further, the hearing examiner specifically found that the Claims Settlement Division *"deemed [these funds] to be due from her"* when, in fact, the Department had no claim at all to these funds. In such circumstances we must conclude that Armacost's payment, while not achieved through "legal process," was certainly involuntary and not obtained through "fair means" as that term was used in *Good, supra*[1] Accordingly, we

## ORDER

AND NOW, this 22nd day of April, 1975, it is ordered that the order of the Department of Public Welfare, dated June 17, 1974, dismissing the appeal of Helen L. Armacost be and it hereby is reversed; and it is further ordered that the Department of Public Welfare refund to Helen L. Armacost $330.70, plus legal interest from July 20, 1973.

---

1. By way of analogy, we note the well-established principle that the waiver of a legal right requires "a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it." *Johnson v. Concord Mutual Insurance Co.*, 450 Pa. 614, 620, 300 A.2d 61, 65 (1973). *See also Transnational Consumer Discount Company v. Kefauver*, 224 Pa. Superior Ct. 475, 307 A.2d 303 (1973).