Inell and Eddie Dumas, Appellants *v.* Board of Finance and Revenue, Commonwealth of Pennsylvania, Appellee.

Argued March 7, 1977, before Judges Crumlish, Jr., Kramer and Rogers, sitting as a panel of three.

*Jonathan M. Stein,* for appellant.

*Linda S. Lichtman,* Deputy Attorney General, with her *Donald J. Murphy,* Deputy Attorney General, for appellee.

Opinion by Judge Rogers, March 25, 1977:

This is an appeal from a dismissal by the Board of Finance and Revenue (Board) of appellants', Inell Dumas' and Eddie Dumas', petition for refund of

certain social security benefits received by appellants but subsequently paid to the Department of Public Welfare (Department) as reimbursement for previously granted public assistance.

. The facts are stipulated. In 1971, Eddie Dumas became unable to work due to severe arthritis and thus qualified for and received public assistance benefits from the Department totaling $1,803.40 for the period of December 20, 1971 through August 22, 1973. Mr. Dumas also applied for social security disability benefits and on October 6, 1972, in accordance with Department regulations, executed Form 176-K which effected an assignment of such benefits to the Department in an amount sufficient to reimburse the Department for any public assistance benefits paid to Mr. Dumas while awaiting his social security disbursements. In 1973, Mr. Dumas received a lump sum, retroactive, social security award of approximately $2,200 and promptly notified the Department of its receipt. A Department claims settlement agent came to Mr. Dumas' home in late June, 1973 and collected $1,000 from the lump sum award pursuant to the reimbursement claim. Mr. Dumas had no legal counsel at this time and neither knew nor was informed by the claims agent that under *Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973), which was decided January 10, 1973, the reimbursement agreement was not legally enforceable.

On October 31, 1975, more than two years after he paid $1,000 to the Department, Mr. Dumas filed a petition for refund. The Board dismissed the petition for want of jurisdiction, on the ground that the appellants had not proceeded within the two years statute of limitations of Section 503(a) of The Fiscal Code (Code), Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §503(a). The appellants contend that the proper statutory limitation is the five year period pro-

vided by Section 503(a)(4) of the Code, 72 P.S. §503(a)(4). We agree with appellants and reverse.

In *Coshey v. Beal,* 27 Pa. Commonwealth Ct. 440, 366 A.2d 1295 (1976), we held that the Board is the proper forum in which to seek refunds in the circumstances of this case. Section 503(a) of the Code requires that a petition for refund of moneys paid to the Commonwealth "must be filed with the Board within two years of the payment of which refund is requested . . . ."

Section 503(a)(4) of the Code provides an exception:

> When any . . . money has been paid to the Commonwealth, under a provision of an act of Assembly subsequently held by final judgment of a court of competent jurisdiction to be unconstitutional, or under an interpretation of such provision subsequently held by such court to be erroneous. In such case, the petition to the board may be filed either prior or subsequent to such final judgment but must be filed within five years of the payment of which a refund is requested . . . ."

In order to qualify for the extended five years limitation, a petitioner: (1) must have paid money to the Commonwealth pursuant to a provision of an act of assembly or an interpretation thereof; and (2) a court of competent jurisdiction must subsequently hold, by final judgment, said act to be unconstitutional *or* the interpretation thereof erroneous. The appellants first properly note that Section 4(a) of The Support Law, Act of June 24, 1937, P.L. 2045, *as amended,* 62 P.S. §1974(a), states that with certain exceptions not relevant to this case:

> [T]he real and personal property of any person shall be liable for the expenses of his support . . . incurred by any public body or pub-

lic agency, if such property was owned during the time such expenses were incurred, or if a right or cause of action existed during the time such expenses were incurred from which the ownership of such property resulted. Any public body or public agency may sue the owner of such property for moneys so expended . . . . ·

Although The Support Law does not specifically provide that future social security benefits are legally available sources for reimbursement, Department regulations intended to implement and interpret The Support Law[1] stated that social security benefits were subject to legal process.[2] Appellants were therefore required to execute Form 176-K which specifically assigns the social security benefits in question as reimbursement for any public assistance granted and which authorizes legal enforcement of Department claims arising therefrom by providing that:

In order to carry out the purpose of this agreement, I do hereby authorize the prothonotary of, or any attorney of, any court of record of Pennsylvania or elsewhere, to appear for and to enter judgment against me for the sum of Two Thousand Dollars ($2,000.00), with or without declaration with costs of suit, release of errors, without stay of execution, and with fifteen per cent (15%) added for collection fees.

In light of the terms of Form 176-K and the facts surrounding the collection of $1000 from Mr. Dumas,

---

[1] Department Regulation §3820 provides, in pertinent part, that:

The Department's rules and regulations [for reimbursement] . . . have been developed with the advice of the Attorney General [to] implement the common law and the Support Law by establishing the limits of liability specifically.

[2] Department Regulation §3821.2 is titled "List of Properties Liable and Methods of Acknowledgment." At the time in question, social security benefits were included in this list.

we conclude that the money was paid pursuant to the Department's interpretation of The Support Law that he had a legally enforceable duty to do so.

The second requirement of Section 503(a)(4) has likewise been met. *Philpott, supra,* held that the Social Security Act, 42 U.S.C. §407, prohibited any state from utilizing legal process in obtaining public assistance reimbursement out of a recipient's social security benefits.[3] Since *Philpott,* this Court has, on several occasions, reminded the Department of the federal restrictions upon its reimbursement collection activities. *Coshey v. Beal, supra; Wohlgemuth v. Armacost,* 18 Pa. Commonwealth Ct. 394, 336 A.2d 455 (1975); *Good v. Wohlgemuth,* 15 Pa. Commonwealth Ct. 524, 327 A.2d 397 (1974).

Since the practice of seeking reimbursement from social security benefits under the threat of law is not specifically called for by Section 4(a) of The Support Law, and since said law carries a presumption of both federal and state constitutionality,[4] it logically follows that, in light of *Philpott* and our ensuing decisions, Department regulations calling for such reimbursement were erroneous interpretations of The Support Law. Claims for moneys collected by the Department pursuant to this erroneous interpretation may therefore be sought within five years from the date of the payment as provided by Section 503(a)(4) of the Code.

The Board's contention that neither *Philpott* nor our subsequent cases hereinbefore cited hold that Department regulations erroneously interpret The Sup-

---

[3] Because of *Philpott,* the Department issued Public Assistance Memorandum No. 650, Supplement No. 636, instructing its employes that delayed social security benefits were no longer subject to the reach of the Department by legal action. The memorandum was effective November 1, 1973. However, the Department still pursued reimbursement claims established prior to this date.

[4] The Statutory Construction Act of 1972, 1 Pa. C.S. §1922(3).

port Law is clearly without merit. It is true that none of these cases specifically mention The Support Law. However, the Department's regulations assume the enforceability of Form 176-K. When enforceability was held to be violative of federal law the regulations clearly became an erroneous interpretation of The Support Law.

The Board finally says that this Court in *Coshey, supra,* acknowledged the applicability of the two years statute of limitations to the exclusion of the five year period. We disagree. The parties to *Coshey* did not litigate the issue of whether the two or five year period should apply to the petition for refund in that case. The two year statute was assumed to be applicable and the only issue before the Court was whether the petition should be allowed to be filed nunc pro tunc. Since we here hold that the five year limitation of Section 503(a)(4) applies, we are not required to decide whether a late petition may be filed.

Accordingly, we enter the following

ORDER

AND Now, this 25th day of March, 1977, it is Ordered that the order of the Board of Finance and Revenue appealed from be and is hereby reversed and the record is remanded to the Board of Finance and Revenue for action on the appellants' petition for refund.