Mary Lynn, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued June 6, 1978, before President Judge Bowman and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT and DiSALLE.

*Donald Driscoll,* for petitioner.

*Linda M. Gunn,* Assistant Attorney General, for respondent.

OPINION BY JUDGE MENCER, September 20, 1978:

This is an appeal by Mary Lynn (petitioner) from a decision of the Board of Finance and Revenue (Board) denying her petition for refund of $753 which was collected by the Pennsylvania Department of Public Welfare (Department) as reimbursement for interim assistance received by her pending receipt of Federal Supplemental Security Income (SSI) benefits.

Petitioner received general assistance from the Department for approximately two and one-half years before applying, in January of 1975, for SSI benefits under Title XVI of the Social Security Act, 42 U.S.C. §§1381-1385.[1] When she applied for SSI, petitioner agreed in writing to repay the amount of general assistance received pending the determination of her eligibility for SSI. On May 2, 1975, petitioner signed a new form, PA 176-S, entitled "Reimbursement Authorization," which authorized the Secretary of the United States Department of Health, Education, and Welfare (Secretary) to make the first payment of SSI to the Department and authorized the Department to deduct therefrom the amount of interim assistance[2] and pay the balance to petitioner.

The stipulation of facts reveals that the first SSI check was sent to petitioner in July of 1975 and petitioner notified the Department that she had received the check. Thereafter, she was instructed to hold the check until contacted by a Department claims settlement agent. On July 15, 1975, an agent told petitioner that they must cash the check and that she must pay a portion of the proceeds to the Department.

---

[1] Congress established the Supplemental Security Income Program, effective January 1, 1974, in order to provide a "national program" of income maintenance for the aged, blind, and disabled, in accordance with uniform eligibility criteria. *See* 42 U.S.C. §1381, and 1972 U.S. Code Congressional and Administrative News 4992. It repealed and replaced the former federal grant-in-aid programs to the states in support of their adult welfare programs. "In essence, the new SSI program 'federalized' and consolidated the previous programs of aid to the indigent aged, blind and disabled." *Morales v. Minter*, 393 F. Supp. 88, 92 (D. Mass. 1975).

[2] "Interim assistance" is defined in Section 1383(g)(3) as "assistance financed from State or local funds and furnished for meeting basic needs during the period, beginning with the month in which the individual filed an application for benefits . . ., for which he was eligible for such benefits."

After driving petitioner to the bank and home, the agent took the amount owed the Department for interim assistance, $753, returned the remainder, and gave petitioner a receipt. Subsequently, petitioner filed her petition for refund with the Board and appealed the Board's denial to this Court for a proceeding de novo.

Petitioner argues that she is entitled to a refund pursuant to Section 503(a) of The Fiscal Code (Code), Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §503(a),[3] on the grounds that the Commonwealth is not "rightfully or equitably" entitled to the money collected by the Department out of her SSI check and not entitled to it under the authority of the United States Supreme Court decision in *Philpott v. Essex County Welfare Board,* 409 U.S. 413 (1973).

In *Philpott, supra,* the Supreme Court held that 42 U.S.C. §407 prohibited the State from utilizing legal process in obtaining public assistance reimbursement out of a recipient's Social Security benefits, specifically the disability insurance benefits under 42 U.S.C. §423. Section 407 provides, in pertinent part:

[N]one of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. §1383(d)(1) provides that Section 407 shall be applicable to SSI benefits. However, 42 U.S.C. §1383(g)(1) contains a proviso:

---

[3] Section 503(a) of the Code provides, in pertinent part:

The Board of Finance and Revenue shall have the power, and its duty shall be . . . to hear and determine any petition for the refund of . . . moneys paid to the Commonwealth and to which the Commonwealth is not rightfully or equitably entitled and, upon the allowance of any such petition, to refund such . . . moneys. . . .

Notwithstanding subsection (d)(1) of this section . . ., the Secretary may, upon written authorization by an individual, withhold benefits due with respect to that individual and may pay to a State (or a political subdivision thereof if agreed to by the Secretary and the State) from the benefits withheld an amount sufficient to reimburse the State (or political subdivision) for interim assistance furnished on behalf of the individual by the State (or political subdivision).[4]

There is no dispute that, if the SSI check had been sent to the Department in accordance with the procedure established by agreement between the Secretary and the Department pursuant to 42 U.S.C. §1383 (g)(4) and in accordance with petitioner's authorization, the Department would have been entitled to be

---

[4] The House Report No. 94-1296, 1976 U.S. Code Congressional and Administrative News 1727, reports that

the Interim Assistance Reimbursement Program . . . was enacted in 1974 for the purpose of providing Federal reimbursement to states for interim assistance payments made to individuals awaiting final determination on their applications for benefits from the supplemental security income program for the aged, blind and disabled. The IAR program was established to alleviate hardships on potential SSI recipients resulting from delay in determination of SSI eligibility. . . .

Participation in the IAR program is an option which the states may exercise through agreement with the Department of Health, Education and Welfare—an agreement which permits reimbursement to the state or directly to a state or local agency within the state. . . .

. . . .

In its statutorily mandated report on the IAR program, the Department of Health, Education and Welfare recommended that the Interim Assistance Program be made permanent based on the demonstrated effectiveness and efficiency of the program.

reimbursed out of the SSI check for its interim assistance. Petitioner argues, however, that, since the SSI check was sent directly to her, the Department was not entitled to be reimbursed therefrom because of Section 1383(d)(1) and the *Philpott* decision. We disagree.

Unlike *Philpott*, there is a specific statutory exception in Section 1383(g)(1) to the protection afforded the SSI benefits under Section 1383(d)(1). Congress clearly provided by this exception that participating states legally and rightfully may be reimbursed out of SSI benefits for the limited purpose of recouping interim assistance. Aside from the amount of interim assistance, the SSI benefits remain protected by Section 1383(d)(1). By allowing a state to recoup its interim assistance, Congress intended to encourage states to provide assistance during the period of time between application for and receipt of SSI benefits in order to alleviate an applicant's financial hardships; otherwise, there would be no incentive to do so.[5] To hold that the state loses its right to be reimbursed merely because the established procedure was not followed is inconsistent with the legislative intent.

Further, there is no indication that Congress intended to preclude reimbursement by means other than that referred to in Section 1383(g)(1). Section 1383(g)(1) merely establishes a vehicle by which the state may be fully reimbursed directly by the federal government because such direct reimbursement is administratively efficient and conforms with Congressional recognition that it is impractical for states to recoup interim assistance from individual recipients of SSI benefits. *See* the "Findings of the Subcommit-

---

[5] *See* note 4 *supra* and the comments of the Congressional Budget Office in House Report No. 94-1296, 1976 U.S. Code Congressional and Administrative News 1729-30.

tee on Oversight," House Report No. 94-1296, 1976 U.S. Code Congressional and Administrative News 1730.

In view of the specific exception to the application of Section 1383(d)(1) with respect to interim assistance and the legislative intent to fully reimburse a participating state out of SSI funds for interim assistance, we can only conclude that this case is not controlled by *Philpott* and that the Department was entitled to collect the amount of interim assistance from petitioner's SSI benefits.

Our conclusion also means that there is no basis for petitioner's contention that the Department's collection procedure violated the standards established in *St. Clair v. Department of Public Welfare*, 29 Pa. Commonwealth Ct. 150, 370 A.2d 751 (1977), and *Wohlgemuth v. Armacost*, 18 Pa. Commonwealth Ct. 394, 336 A.2d 455 (1975). In the above cases, refunds were ordered because recipients of federal benefits other than SSI believed that they had to reimburse the Department out of such benefits in accordance with their written agreements and did so; whereas, in fact, under *Philpott,* the Department was not entitled to be reimbursed out of the benefits, and the agreements were not binding as to said benefits. In this case, the special agreements were binding and the Department was entitled to be reimbursed from SSI benefits under Section 1383(g)(1) and the petitioner was not misled.

Finally, petitioner contends that the Department violated its own regulations in failing to provide written notice to petitioner of its intent to collect reimbursement and in failing to inform petitioner of available legal services. If this were so, petitioner argues that a refund would be proper in accord with *Good v. Wohlgemuth*, 15 Pa. Commonwealth Ct. 524, 327 A. 2d 397 (1974) (this Court ordered the refund of money

collected by the Department in contravention of Department regulations). However, petitioner has failed to show that the Department violated any of its regulations.

First, petitioner relies on regulations 3512.3 and 3512.32 of the DPW-OIM-PA Manual, effective September 1, 1974, which in broad terms require written notification of any Department action. It is clear, however, that these regulations have no application to the regulations governing collection and reimbursement procedures. The title of the section in which the regulations appear, "Redetermining Eligibility," intimates the description of matters to be contained in a notification, and the corresponding new regulations found at 55 Pa. Code §133.4 clearly indicate that the regulations only apply in the event of a redetermination of eligibility. Second, petitioner has not invited our attention to a regulation which requires the Department to provide information about legal services during the collection or reimbursement process, especially without some request by petitioner for such assistance or referral. Petitioner did not allege that such a request was made.

In view of the above, we find that the Board properly decided that petitioner was not entitled to a refund under Section 503(a) of the Code, since the Commonwealth was equitably and rightfully entitled to the funds collected by the Department. Therefore, we affirm the order of the Board.

ORDER

AND Now, this 20th day of September, 1978, the order of the Board of Finance and Revenue, dated December 15, 1976, refusing the petition for refund filed by Mary Lynn, is affirmed.