No. 90-239

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

DONALD DEAN,

      Plaintiff and Respondent,

-vs-

FRED'S TOWING, MISSOULA COUNTY
SHERIFF'S DEPARTMENT,

      Defendants,

   and

MICHAEL R. HOEPFNER,

      Defendant and Appellant.

FILED

NOV 2 6 1990

Ed Smith
CLERK OF SUPREME COURT.
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Terry G. Sehestedt, Attorney at Law, Missoula,
Montana
Barbara Dockery Tremper, Attorney at Law, Missoula,
Montana

     For Respondent:

          Morgan Modine, Attorney at Law, Missoula, Montana

Submitted on Briefs:  September 13, 1990

Decided:  November 26, 1990

Filed:

Clerk

Justice Diane G. Barz delivered the Opinion of the Court.

Appellant, Michael Hoepfner appeals from the denial of his motion to set aside a default judgment issued by the Fourth Judicial District Court, Missoula County, and from the court's ruling that funds in a joint bank account traceable to his spouse's social security benefits are not exempt from execution. We affirm in part, reverse in part and remand.

Appellant raises the following issues on appeal:

1. Did the District Court abuse its discretion in refusing to set aside the default judgment against Hoepfner?

2. Did the District Court err in finding bank deposits traceable to the judgment debtor's spouse's social security benefits are not exempt from execution?

In an earlier action independent of the case at bar, appellant Michael Hoepfner recovered a judgment by default in the Missoula County Justice Court against Bob and Edella Icenhower. The judgment, entered June 1, 1989, arose from the Icenhower's failure to pay for a 1977 Freightliner truck they were purchasing from Hoepfner. On the same day, the Justice Court issued a writ of execution directing the Missoula County Sheriff to levy against the Icenhower's non-exempt assets to satisfy the judgment.

On June 13, 1989, pursuant to the writ, a sheriff's deputy seized the Freightliner truck. The truck was located on property owned by respondent Donald Dean. Dean runs an auto repair shop on the property and had apparently performed repairs on the Freightliner. In seizing the truck the deputy found it necessary

2

to enlist the services of Fred's Towing. The truck was towed to a storage area and later sold at a sheriff's sale at which Hoepfner was the successful bidder.

On July 17, 1989, Dean filed a complaint in the District Court seeking recovery against Hoepfner, the Missoula County Sheriff's Department and Fred's Towing, jointly and severally. Dean's complaint alleged that personal and real property of his were damaged in the course of seizing the Freightliner; that Dean had an agister's lien against the Freightliner for repairs performed; and that Hoepfner paid less than fair market value for the truck at the sheriff's sale.

Hoepfner and Fred Burgess of Fred's Towing were both served with summons and complaint on July 25, 1989. On August 1, 1989, a temporary restraining order was served upon Hoepfner, restraining him from selling, transferring, or otherwise disposing of the Freightliner truck. On August 2, 1989, Hoepfner sent a letter to Dean's attorney regarding the lawsuit and sent a copy to the Justice Court rather than the District Court. The letter never reached the proper court file.

Hoepfner never made a formal appearance in the cause and on December 13, 1989, entries of default and default judgment were entered against him.

Following denial of Hoepfner's motion to set aside the default judgment the court conducted a hearing to determine whether the money seized from Mr. and Mrs. Hoepfner's joint bank account was exempt from execution. The court found that Mr. Hoepfner's social

security benefits were exempt, but that his spouse's social security benefits, totaling $244, were properly seized pursuant to the writ of execution.

I.

Did the District Court abuse its discretion in failing to set aside the default judgment entered against Hoepfner?

The Montana Rules of Civil Procedure allow for the setting aside of a default judgment:

> For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Rule 55(c), M.R.Civ.P.

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) when a defendant has been personally served, whether in lieu of publication or not, not more than 60 days after the judgment, order or proceeding was entered or taken, or, in a case where notice of entry of judgment is required by Rule 77(d), not more than 60 days after service of notice of entry of judgment. . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as may be required by law, or to set aside a judgment for fraud upon the court.

Rule 60(b), M.R.Civ.P.

This Court has previously specified what is necessary to set

4

aside a default judgment under the "excusable neglect" standard of Rule 60(b), M.R.Civ.P.:

> "In order to justify the district court in granting the motion, the defendant was required to show: (a) That he proceeded with diligence; (b) his excusable neglect; (c) that the judgment, if permitted to stand, will affect him injuriously, and that he has a defense to plaintiff's cause of action upon the merits." (Citation omitted.)

Kootenai Corp. v. Dayton (1979), 184 Mont. 19, 26, 601 P.2d 47, 51.

In determining whether the lower court abused its discretion we must look at Hoepfner's actions and compare them to the "excusable neglect" standard. We find that the second requirement, the question of excusable neglect, is dispositive of this issue. Hoepfner argues that his neglect was excusable because he believed that his letter to Dean's attorney sufficed as his answer and that a copy of his letter was inadvertently sent to the wrong court.

We have reviewed Mr. Hoepfner's letter to Dean's attorney and conclude that it does not serve as a basis for a finding of excusable neglect. The letter written by Hoepfner was one of explanation only and does not constitute a legitimate response to Dean's complaint. Nor is there any showing that the letter was delivered in a manner reasonably calculated to be filed as an answer. This conclusion is bolstered by the fact that in his affidavit in support of the motion to set aside the default judgment, Hoepfner made the following statements contradicting his subsequent assertion that he believed the letter sufficed as an answer:

> 2. Shortly after he was served with

5

Summons and Complaint in this cause he met with Fred Burgess of Fred's Towing, another Defendant, herein.

3. At said meeting he and Fred Burgess prepared a handwritten response to the Complaint and each signed it. Said document was left with Fred Burgess and it was Affiant's understanding that Fred Burgess would and in fact had thereafter filed such response or answer with the Clerk of this Court.

No such document was ever filed with the court. Dean's attorney did receive a letter from Fred Burgess, which was signed only by Burgess, but this letter was one of warning of dire consequences in the event that Dean continued with his lawsuit and not an answer. Moreover, it can hardly be said that Hoepfner was unaware of court procedures when Hoepfner himself used a default judgment in the underlying action.

Hoepfner further contends that the letter he sent to Dean's attorney constituted a sufficient appearance in the cause to have been entitled to notice prior to the entry of judgment by default pursuant to Rule 55(b)(2), M.R.Civ.P. Hoepfner argues that Dean's failure to provide notice is a serious procedural error which requires setting aside the default judgment.

Rule 55(b)(2), M.R.Civ.P., requires three days written notice of the motion for judgment by default if the party against whom default judgment is sought has appeared in the action. However, assuming arguendo that Hoepfner had made a sufficient appearance to be entitled to notice, failure to give notice to the defaulting party does not automatically entitle the defaulting party to relief, but is merely one consideration to be weighed by the court

6

in exercising its discretion in determining a Rule 55(c) motion. In re Marriage of Neneman (1985), 217 Mont. 155, 160, 703 P.2d 164, 167.

While it is true that default judgments are not favored, Lords v. Newman (1984), 212 Mont. 359, 363, 688 P.2d 290, 293, we agree with the District Court that the circumstances surrounding this case do not warrant setting aside the default judgment.

We hold that the District Court did not abuse its discretion in refusing to set aside the default judgment against Hoepfner.

## II.

Did the District Court err in finding bank deposits traceable to the judgment debtor's spouse's social security benefits are not exempt from execution?

The District Court, applying § 25-13-608, MCA, found that bank deposits traceable to Hoepfner's social security benefits are exempt from execution. Section 25-13-608, MCA, provides in part: "(1) A judgment debtor is entitled to exemption from execution of the following . . . (b) benefits the judgment debtor has received or is entitled to receive under federal social security or local public assistance legislation . . . " The District Court, focusing on the language "judgment debtor" in the statute, found that social security benefits belonging to the spouse of the judgment debtor, and similarly traced to the parties' joint bank account, are not exempt from execution.

Hoepfner cites 42 U.S.C. § 407(a), arguing that federal law

mandates the spouse's social security benefits be found exempt from execution. We agree.

With respect to social security benefits, 42 U.S.C. § 407(a) provides in part:

> [N]one of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment, garnishment, or other legal process . . .

In Philpott v. Essex County Welfare Board (1973), 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608, the United States Supreme Court held that social security funds deposited in a savings account still maintain their exempt character. Additionally, in interpreting 42 U.S.C. § 407(a), the United States Supreme Court stated:

> But § 407 does not refer to any "claim of creditors"; it imposes a broad bar against the use of any legal process to reach all social security benefits. That is broad enough to include all claimants . . . .

Philpott, 409 U.S. at 416-17, 93 S.Ct. at 592. We note, however, that the prohibition contained in 42 U.S.C. § 407(a) is subject to certain exceptions. For example, 42 U.S.C. § 659 provides that notwithstanding § 407, money due or payable from the United States to any individual shall be subject to legal process brought to enforce the individual's legal obligations to provide child support or make alimony payments.

The Ohio Court of Appeals, in General Motors Acceptance Corporation v. Deskins (Ohio App. 1984), 474 N.E.2d 1207, addressed the issue of how to handle commingling of exempt and non-exempt funds in a joint bank account:

8

> We see no reason why the "tracing" of funds as used here to determine what amount in an account is attributable to exempt funds should not apply with equal force to exempt social security funds in an account . . . if sums [are] exempt at their source they remain exempt even though commingled with non-exempt funds, as long as the exempt source of the funds [are] reasonably traceable. (Citation omitted.)

General Motors Acceptance Corp., 474 N.E.2d at 1211-12.

In light of the above, we find that in circumstances such as those presented in this case, social security benefits deposited in bank accounts, if reasonably traceable, are exempt from execution.

Montana recognizes tracing of exempt property in § 25-13-610, MCA. Pursuant to § 25-13-610, MCA, when exempt property under § 25-13-608, MCA, has been converted to cash and deposited in a bank account, it remains exempt for up to six months to the extent the bank deposit can be traced to such property by any reasonable accounting method.

There is no question in the instant case that the spouse's social security benefits are reasonably traceable. At the hearing Hoepfner elected to account for the sums present in the joint account on a "first-in-first-out" basis. The evidence at the hearing clearly showed that the $2,353.09 on deposit at the time the account was seized could be traced to the following sources: (1) wages, interest, and other, $912.42; (2) Hoepfner's social security benefits, $1,196.67; and (3) Hoepfner's spouse's social security benefits, $244.00.

We hold the District Court erred in finding bank deposits

9

traceable to the judgment debtor's spouse's social security benefits are not exempt from execution.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices