**In re Lori Ann FAGER, Brian Lee Fager, Debtors.**

**No. 01–19329–EEB.**

United States Bankruptcy Court, D. Colorado.

Feb. 28, 2002.

Alexander L. Wright, Esq., Denver, CO, for Sally J. Zeman, Standing Chapter 13 Trustee.

L.B. Schwartz, Esq., Englewood, CO, for Debtors.

## ORDER DENYING EXEMPTION

ELIZABETH E. BROWN, Bankruptcy Judge.

This matter is before the Court on the Chapter 13 Trustee's Objection to one of the Debtors' exemptions. After a non-evidentiary hearing, the parties submitted this matter to the Court, without asserting any dispute as to material facts. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and it is a core proceeding. 28 U.S.C. § 157(b)(2).

In their Schedule C, the Debtors have listed an exemption based on "a claim for negligence against Kessler Construction—dubious claim—value $650 for fire loss." At the hearing, the parties stipulated that some of the Debtors' household goods were destroyed in a fire caused by this construction company. The Debtors do not have an insurance policy of their own to cover these losses nor do they know if Kessler Construction has such coverage.

They have asserted their exemption under C.R.S. § 13–54–102(1)(e) (hereinafter "Subsection E"). Subsection E covers "household goods owned and used by the debtor or the debtor's dependents to the extent of three thousand dollars in value." The Debtors assert that the proceeds of these goods are covered by this subsection as well and that the Debtors' chose in action against the construction company for their destruction represents "proceeds" from the household goods.

█ Our state constitution mandates the enactment of liberal homestead and exemption laws. Colo. Const. art. XVIII, § 1. The decisions of the courts of this state have construed our exemption statutes liberally in harmony with this policy. *See, e.g., Martin v. Bond,* 14 Colo. 466, 24 P. 326 (1890); *Hawkins v. Mosher,* 8 Colo. App. 31, 44 P. 763 (1896). Accordingly, this Court must not construe this exemption statute so strictly as to defeat its purpose and design. In order to discern the legislature's intent, the Court must first look to the words of the statute itself, giving them their usual and ordinary meaning. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

The term "household goods" is defined in C.R.S. § 13–54–101(4), and it includes such things as furniture, furnishings, dishes, televisions and the like. Recreational items, such as guns, are not within its scope. *In re Greenlee,* 61 B.R. 257 (Bankr.D.Colo.1986); *In re Debias,* 198 F.3d 257, 1999 WL 1032968 (10th Cir.1999)(unpublished disposition). Neither the definition nor Subsection E expressly include any reference to "proceeds" of household goods.

In other subsections of the exemption statutes, the legislature expressly refers to the "proceeds" of certain types of assets. C.R.S. § 13–54–102(1)(m) ("Subsection M") exempts the *"proceeds of* any claim for loss, destruction, or damage and the *avails of* any fire or casualty insurance payable because of loss, destruction, or damage to any property which would have been exempt under this article to the extent of the exemptions incident to such property." (emphasis added). The following subsection exempts the *"proceeds of* any claim for damages for personal injuries suffered by any debtor except for obligations incurred for treatment of any kind for such injuries or collection of such damages." C.R.S. § 13–54–102(1)(n)(emphasis added). Similarly, subsection 1 refers to the "cash surrender value" of life insurance policies and the proceeds of certain life insurance policies payable on death. C.R.S. § 13–54–102(1)(*l* ). C.R.S. § 38–41–207 specifically extends the exemption to non-commingled proceeds from the sale of a debtor's homestead, (to the extent of the homestead exemption which is presently $45,000), for a period of one year after the sale.

The fact that the legislature referred to proceeds in some instances and not others in these exemption statutes indicates that when exempt property is transformed into another form of property, it does not necessarily retain its exempt status. *In re Gillespie,* 41 B.R. 810 (Bankr.D.Colo.1984); *but see In re Larson,* 260 B.R. 174, 189 n. 16 (Bankr.D.Colo. 2001).

In addition, C.R.S. § 13–54–102 is replete with references to items of property "kept and used" or "owned and used" by the debtor or the debtor's dependents. Subsection E dealing with household goods employs the phrase "owned and used." If goods are destroyed, by fire or otherwise, they can no longer be "used" by a debtor. The statute has limited its protection of a debtor's right to these assets by requiring that they remain in the hands of the debtor.

Finally, the legislature provided an exemption in Subsection M that covers the proceeds from any claim for the loss, destruction, or damage of exempt property. In response to the Court's questioning at the hearing on this matter, the Debtors conceded that they probably could have asserted an exemption under Subsection M for the destruction of their household goods. To date, however, the Debtors have not amended their Schedule C, presumably because they would prefer to first obtain this Court's ruling on their existing claim of exemption.

Interestingly, C.R.S. § 13–54–102(1)(j), which exempts motor vehicles, also contains no reference to proceeds and the exemption statutes do not specifically refer to the proceeds or avails of an automobile insurance policy. To the extent that the debtor's car is damaged or the debtor suffers personal injuries, limited exemptions are available under C.R.S. § 13–54–102(1)(m) & (n), for damage to otherwise exempt property and for personal injuries, respectively. The Colorado Supreme Court has held that a debtor's right to a defense and indemnification from its insurance company is not exempt property. *Baker v. Young,* 798 P.2d 889, 894 (Colo.

1990). Thus, an injured non-debtor may seek to attach the debtor's right to indemnification from his/her insurance company and thereby ultimately attach any proceeds payable for the benefit of third parties. *Id.* The omissions in these statutes, therefore, likely reflect countervailing public policy considerations, such as the protection of injured non-debtors.

In *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 39 F.3d 1078 (10th Cir. 1994)(en banc), a majority of the Tenth Circuit concluded, among other things, that a debtor did not lose his exemption under Colorado law to his pension funds after they were paid to him and deposited into a non-commingled bank account. This act of converting exempt property into another form did not cause the debtor to lose his exemption. The majority relied on *Rutter v. Shumway,* 16 Colo. 95, 26 P. 321 (1891), which extended a former statute's exemption in wages to their funds on deposit. The *Shumway* court found any other construction of the statute "would be narrow and illiberal. It would compel the laborer to leave his earnings in the hands of his employer, or else forego the protection of the statute altogether." *Id.,* 26 P. at 322. The Tenth Circuit's majority further relied on the Supreme Court's interpretation of the Social Security Act's prohibition against garnishment of "the moneys paid or payable" under the Act in *Philpott v. Essex County Welfare Bd.,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), which it held extends to the funds after they have been deposited into a bank account. The dissenting minority of the Tenth Circuit noted the language in other statutes that expressly provides continuous protection of pension funds following a distribution, which is absent from the statute under construction by the majority, and concluded that the legislature knew how to provide continuous protection when it wanted this result, but it chose not to include such language within the general earnings exemption.

This Court recognizes that superficially it appears to be adopting a construction of the exemption statute that follows the rationale of the dissent in *Guidry,* rather than the majority. *Guidry,* however, is distinguishable for at least two reasons. First, the court was construing language of "compensation paid or payable," which clearly contemplates the conversion of the asset from a claim against an employer to some other asset, typically to a negotiable instrument, and ultimately to cash or a deposit of some kind. "Paid or payable" recognizes by its own terms this changing nature.

Secondly, construing Subsection E more narrowly, by not inferring that it includes "proceeds," does not defeat the purpose of the statute. Undoubtedly, the legislature intended to leave the basic necessities of life in the hands of debtors. Subsection E, however, requires that the household goods be owned and "used" by the debtor to qualify for this exemption. Any other interpretation would render superfluous the term "used." A debtor who sells his household goods assumes the risk of losing the exemption. Subsection M protects the debtor who suffers an involuntary loss of such exempt property. Thus, it is not necessary to interpret Subsection E to include proceeds of this exempt property in cases of loss or damage of property, and to do so would extend Subsection E's protection beyond its intended scope.

For the foregoing reasons, the Court sustains the Trustee's Objection and denies the Debtors' claim of exemption in the destroyed household goods under C.R.S. § 13–54–102(1)(e).