DEPARTMENT OF TREASURY v IVY

*In re* VARY ESTATE

OPINION OF THE COURT

1. SOCIAL SECURITY AND PUBLIC WELFARE—ESTATES.

Accumulated social security benefits are the property of the decedent and pass to his estate at his death and once the moneys are in the estate they must be disbursed either as expenses, claims, or distributions before the estate can be closed.

2. SOCIAL SECURITY AND PUBLIC WELFARE—CREDITORS—ASSETS—BANK ACCOUNTS—ESTATES OF DECEDENTS.

The underlying principle of the social security system is to protect the social security beneficiaries from some of the hardships of existence but that principle is not violated by allowing creditors to take assets of a bank account consisting solely of the remains of social security benefits paid to the decedent because all the decedent's current needs were met when the funds were used to provide her with a Christian burial, she has no reasonably foreseeable current needs, there is no use to which the funds could be put that will aid the decedent in meeting the barest essentials of life, and nothing indicates that these funds will assist anyone dependent on the decedent for their support in meeting the bare necessities of life.

3. SOCIAL SECURITY AND PUBLIC WELFARE—ESTATES—TRACING—EXECUTION—LEVY—ATTACHMENT—GARNISHMENT—BANKRUPTCY.

Once social security benefits pass to the estate of a recipient they lose their distinctive character of being traceable and they lose the protection of a section of the Social Security Act which provides that no moneys paid under the act shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law (42 USC 407).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 31 Am Jur 2d, Executors and Administrators § 6.

[2, 4] 31 Am Jur 2d, Executors and Administrators § 463.

[3, 5] 70 Am Jur 2d, Social Security and Medicare § 30.

4. Social Security and Public Welfare—Estates—Bank Accounts —State Charge.

Social security funds remaining constructively in the decedent's hand at the time of death are a general asset of the estate and are available to pay proper administration expenses and may be reached by creditors who have timely filed claims with the probate court; therefore, the state and county were entitled to reimbursement for the institutionalization of decedent, as a state charge, from a bank account which consisted solely of the remains of social security benefits paid the decedent during her institutionalization.

Dissent by Bronson, P. J.

5. Social Security and Public Welfare—States—Counties—Bank Accounts.

A United States Supreme Court decision provides that all claimants, including a state, are subject to a section of the Social Security Act providing that none of the moneys paid under the act shall be subject to execution, levy, attachment, garnishment, other legal process, bankruptcy or insolvency; therefore, moneys in a decedent's bank account consisting solely of the remains of social security benefits could not be used to satisfy the claims of the state and the county for the institutionalization of decedent at a state hospital (42 USC 407).

Appeal from Wayne, Blair Moody, Jr., J. Submitted June 12, 1975, at Detroit. (Docket No. 20547.) Decided November 12, 1975. Leave to appeal applied for.

Claim in probate court by the Department of Treasury against Susie Ivy and I. Goodman Cohen, co-administrators of the estate of Jeanette Vary, for charges arising out of institutionalization of the deceased at a state hospital. The probate court allowed the claim. The co-administrators petitioned for a determination of rights concerning a bank account. The probate court declared that the moneys in the bank account could not be used to satisfy the claims of the state. The circuit court affirmed. The Department of Treasury appeals by leave granted. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *E. David Brockman,* Assistants Attorney General, for plaintiff State of Michigan.

*I. Goodman Cohen,* for defendants.

Before: BRONSON, P. J., and V. J. BRENNAN and D. E. HOLBROOK, JR., JJ.

D. E. HOLBROOK, JR., J. Following Jeanette Vary's death on August 8, 1971, the State of Michigan and Wayne County filed claims against her estate for charges arising out of her institutionalization at Northville State Hospital. The probate court granted the state's claim in the amount of $20,084.60 and the county's claim in the amount of $3,370.96. The estate's assets consist of a single-family home valued at $10,000 to $12,000 and a bank account with a $5,547.39 balance. The bank account consists solely of the remains of social security benefits paid for the benefit of the decedent during her institutionalization.

After the probate court allowed these two claims, the co-administrators of the decedent's estate petitioned the probate court for a determination of rights concerning the bank account. Relying on *Philpott v Essex County Welfare Board,* 409 US 413; 93 S Ct 590; 34 L Ed 2d 608 (1973), the probate court declared that the monies in the bank account could not be used to satisfy the claims of the state and the county. On appeal, the circuit court affirmed the decision of the probate court again relying on *Philpott v Essex County Welfare Board, supra.* The state filed for leave to appeal with this Court and leave was granted.

Decedent was committed to Northville State

Hospital on March 22, 1967, as a state charge.[1] While so confined the present co-administrators served as guardians of her estate. In this capacity they deposited approximately $8,000 in social security checks, from which they paid the minor guardianship expenses, the small personal expenses of the decedent while she was confined and the costs of her Christian burial.

In making their claims, the state and the county are seeking reimbursement for costs of the decedent's institutionalization pursuant to MCLA 330.17; MSA 14.807.[2] Defendants do not contest that the state and county have a valid claim against the estate for the care of the decedent. However, they contend that § 207 of the Social Security Act[3] makes the benefits paid to the decedent immune from legal process.

The section provides in relevant part:

"[N]one of the moneys paid * * * under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

Thus the sole decisional issue is whether § 207 of the Social Security Act prohibits the use of social security benefits for the payment of accrued claims

[1] MCLA 330.17; MSA 14.807. This section has been replaced by a comprehensive chapter on reimbursements for institutionalized care in the new Mental Health Code. MCLA 330.1800–330.1844; MSA 14.800(800)–14.800(844).

During the first year of a person's institutionalization the state bills the county that the person formerly resided in for the costs of the institutionalization. MCLA 330.21; MSA 14.811. This also has been changed by the new Mental Health Code. MCLA 330.1302; MSA 14.800(302).

[2] This section has been replaced by a comprehensive chapter on reimbursement for institutionalized care in the new Mental Health Code. MCLA 330.1800–330.1844; MSA 14.800(800)–14.800(844).

[3] 53 Stat 1372 (1939), 42 USC 407.

against the estate of the beneficiary after the beneficiary's death.

At a person's death it is the duty of the administrator of the person's estate to collect the assets of the person to meet the expenses of administration, pay the valid claims of creditors, and distribute the remainder to the decedent's heirs. MCLA 707.1; MSA 27.3178(381), MCLA 702.95; MSA 27.3178(165), MCLA 702.80; MSA 27.3178(150), MCLA 702.93; MSA 27.3178(163). Since accumulated social security benefits are the property of the decedent, they pass to his estate at his death. *Cf. Beers v Federal Security Administrator,* 172 F2d 34 (CA 2, 1949), *Gardner v Ewing,* 88 F Supp 315 (SD Ohio, 1950), *aff'd,* 185 F2d 781 (CA 6, 1950), *rev'd in part on other grounds,* 341 US 321; 71 S Ct 684; 95 L Ed 968 (1951). Once the monies are in the estate they must be disbursed either as expenses, claims, or distributions before the estate can be closed.

Under ordinary circumstances the bank account in dispute would be disbursed in accordance with the Michigan statutes. However, since the Social Security Act is a Federal statute, under the Supremacy Clause of the United States Constitution if there is a conflict between the statutes the Federal statute must control. On its face § 207 seems to prohibit any creditor from using "any legal process" to reach accumulated social security benefits of any beneficiary. *Philpott v Essex County Welfare Board, supra.* To further protect social security recipients from having their benefits subjected to legal process the Supreme Court has interpreted the section to mean that funds are protected in checking and savings accounts. *Philpott v Essex County Welfare Board, supra* at 416, accord, *Porter v Aetna Casualty & Surety Co,* 370

US 159; 82 S Ct 1231; 8 L Ed 2d 407 (1962), *cf. Lawrence v Shaw,* 300 US 245; 57 S Ct 443; 81 L Ed 623 (1937), see also 20 CFR 404.1608.

This protection from "any legal process" for accumulated social security benefits goes to the underlying principle of the social security system. The underlying principle of the system is to protect the social security beneficiaries from some of the hardships of existence. *United States v Silk,* 331 US 704, 711; 67 S Ct 1463; 91 L Ed 1757 (1947). It simply does not comport with the philosophy of the Social Security Act to allow a creditor to take what is necessary for bare existence at the current time for past debts. Even allowing a creditor to reach accumulations of benefits does not comport with this philosophy since at any time the accumulation may be necessary for the recipient's current needs. *Algier Estate,* 43 Pa D & C2d 351, 357 (Orphan's Court, 1967).

In the present case all the decedent beneficiary's current needs were met when the funds in the guardianship account were used to provide her with a Christian burial. At the present time the decedent has no reasonably foreseeable current needs. There is no use to which the funds could be put that will aid the decedent in meeting the barest essentials of *life.* Furthermore, there is nothing in the record to indicate that these funds will assist anyone dependent on the decedent for their support in meeting the bare necessities of life. *Cf. Good v Wohlgemuth,* 15 Pa Cmwlth 524; 327 A2d 397 (1974).

Although the social security benefits retain their distinctive character in a traceable bank account, once they pass to the estate of the recipient they lose that characteristic. Accord, *State v Monaco,* 81 NJ Super 448; 195 A2d 910 (1963), *State v*

*Wendt,* 94 Ohio App 440; 116 NE2d 30 (1953). This is because the recipient and the recipient's estate are different "persons" even though the latter is a mere continuation of the former. When the accumulated funds lose the characteristic of being traceable social security receipts they lose the protection of § 207 of the Social Security Act. Accord, *State v Monaco, supra.*

Hence, we conclude that social security funds remaining constructively in the decedent's hand at the time of death are a general asset of the estate. As such the funds are available to pay proper administration expenses and may be reached by creditors who have timely filed claims with the probate court. MCLA 702.95; MSA 27.3178(165). This is in accord with the underlying principles of § 207 of the Social Security Act, since the purpose of this section is to protect the recipient, not the heirs of the recipient. Accord, *State v Monaco, supra, Estate of Buxton,* 246 Wis 97; 16 NW2d 399 (1944).

The judgment of the circuit court is reversed and the case is remanded to the probate court for proceedings consistent with this opinion. No costs, a public question being involved.

V. J. BRENNAN, J., concurred.

BRONSON, P. J. *(dissenting).* As the majority points out, both the probate court and the circuit court found *Philpott v Essex County Welfare Board,* 409 US 413; 93 S Ct 590; 34 L Ed 2d 608 (1973), to be controlling here. The basis for that decision was set forth in the well-reasoned opinion of Wayne County Circuit Court Judge Blair Moody, Jr.:

"The fact that this case involves the estate of a

deceased, whereas in *Philpott* the question involved an individual still living, is a difference without significance in view of the broad language of the Federal Act. It speaks of 'monies paid or payable' irrespective of the recipient. Such broad language did allow no differentiation as to whether the eventual recipient was then alive or deceased."

I agree and vote to affirm.