*In re* VARY ESTATE

DEPARTMENT OF TREASURY v IVY

Docket No. 57829. Argued March 1, 1977 (Calendar No. 3).—Decided
     October 6, 1977. *Certiorari denied by the Supreme Court of the*
     United States February 21, 1978.

> The Department of Treasury brought a claim against Susie Ivy
> and I. Goodman Cohen, co-administrators of the estate of
> Jeanette Vary, deceased, for charges arising out of her care in
> Northville State Hospital. The Wayne County Probate Court,
> Joseph J. Pernick, J., allowed the claim but held that cash in a
> bank account which was accumulated from Mrs. Vary's social
> security benefits could not be used to satisfy the claim of the
> state. The Wayne Circuit Court, Blair Moody, Jr., J., affirmed.
> The Court of Appeals, V. J. Brennan and D. E. Holbrook, Jr.,
> JJ. (Bronson, P. J., dissenting), reversed (Docket No. 20547).
> Defendant administrators appeal. *Held:*
>
> 1. A purpose of the Social Security Act is to enable each
> state, so far as practicable under the conditions in the state, to
> furnish financial assistance to aged needy people. So long as the
> recipient lives, the accumulated social security benefits gener-
> ally could not be diverted by legal process to creditors, because
> to allow creditors to take those benefits while the person lived
> would not comport with the purpose of the Social Security Act,
> which is to protect recipients from some of the hardships of
> existence.
>
> 2. The Social Security Act controls if there is a conflict
> between Michigan law on the disbursement of an estate and
> the Social Security Act. However, the Court should not create a
> conflict where there is none.
>
> 3. The exemption of social security benefits from legal process
> in the Social Security Act, being personal to the recipient, ends
> at the death of the recipient. If Congress had intended to
> exempt social security benefits from legal process even when

REFERENCES FOR POINTS IN HEADNOTES
[1] 70 Am Jur 2d, Social Security and Medicare §§ 2, 4.
[2, 4–9] 70 Am Jur 2d, Social Security and Medicare § 67.
[3] 70 Am Jur 2d, Social Security and Medicare § 2.

the recipient died, it would have said so or would have used different wording.

4. A simple, straightforward interpretation of the statute permits not only a logical and ethical conclusion, but is necessary to avoid a result contrary to the intent to protect the needy and aged person. The act protects the funds from actions commonly brought against living persons. The words "or other legal process" must be interpreted as consistent with the named actions at law. There is no language anticipating death. Further the Federal act does not purport to do with state law other than to provide for possible payment of moneys which were due the living person into the "estate". It is consistent with the wording of the act to find that Congress intended state law to apply in an estate subject to probate.

Justice Levin, dissenting, said that while it may be reasonable to terminate the exemption upon the recipient's death, there is no token of a purpose in the language employed by Congress so to limit the extent of the exemption. Creditors cannot complain of the recipient's use, misuse, or nonuse of the moneys. The exemption continues, apart from exceptions stated in other legislation, as long as the payments retain the quality of moneys and until permanently invested. The distinction drawn by the Court would discourage frugality and unnecessarily encourage well-advised debtors to make inter vivos donative transactions to protect accumulated benefits from the claims of creditors. Social security payments sustain not only the recipient but his dependents. Accumulations of benefits are likely to represent a reduction in the level of expenditure for dependents as well as for the recipient, and there is as much reason to believe that Congress intended that accumulations of frugality would be available for the continuing needs or sustenance of those who survive the recipient as there is to believe that Congress intended that the relatively small amounts ordinarily accumulated must be used to pay the recipient's creditors. In enacting this exemption Congress necessarily created a conflict between Federal law and state law allowing persons to assign their property and creditors to proceed against the property of a debtor. The argument that the proposed distinction will encourage creditors to extend credit to the aged needy assumes that credit is extended on tenuous assumptions. It has also been suggested that the exempt funds might be commingled with nonexempt funds, but that can occur during the lifetime of the recipient. If the recipient is able to accumulate social security payments there are likely, as here, to be sufficient

other assets to cover the probate and other costs of transferring the funds.

Affirmed.

65 Mich App 447; 237 NW2d 498 (1975) affirmed.

OPINION OF THE COURT

1. SOCIAL SECURITY AND PUBLIC WELFARE—LEGISLATIVE PURPOSE.

A purpose of the Social Security Act is to enable each state, as far as practicable under the conditions in the state, to furnish financial assistance to aged needy people (42 USC 301).

2. SOCIAL SECURITY AND PUBLIC WELFARE—BENEFITS—CREDITORS' RIGHTS.

Accumulated social security benefits generally may not be diverted by legal process to creditors so long as the beneficiary lives except for tax claims of the Internal Revenue Service, and for child support and alimony (26 USC 6331, 42 USC 407, 42 USC 659).

3. SOCIAL SECURITY AND PUBLIC WELFARE—DECEDENTS' ESTATES— STATUTES.

The Social Security Act would control if there were a conflict between Michigan law on the disbursement of an estate and the Social Security Act (42 USC 301, *et seq.*).

4. SOCIAL SECURITY AND PUBLIC WELFARE—BENEFITS—CREDITORS' RIGHTS.

Social security benefits are for the support of living people with continuing needs; if Congress had intended to exempt social security benefits from legal process even when the recipient died, it would have said so or would have used different wording (42 USC 407).

5. SOCIAL SECURITY AND PUBLIC WELFARE—BENEFITS—CREDITORS' RIGHTS—DECEDENTS' ESTATES.

The exemption by the Social Security Act of social security benefits from execution, levy, attachment, garnishment, or other legal process, or the operation of any bankruptcy or insolvency law is a protection that does not survive the recipient (42 USC 407).

DISSENTING OPINION BY LEVIN, J.

6. SOCIAL SECURITY AND PUBLIC WELFARE—BENEFITS—CREDITORS' RIGHTS.

*No creditor, including the state, may use legal process to reach*

*social security benefits; creditors cannot complain of the recipient's use, misuse or nonuse of the moneys (42 USC 407).*

7. SOCIAL SECURITY AND PUBLIC WELFARE—BENEFITS—CREDITORS' RIGHTS.

*The exemption of social security benefits from legal process continues, apart from exemptions stated in other legislation, as long as the payments retain the quality of moneys and until permanently invested; a recipient may, thus, give the moneys to a dependent or other person, he may create an inter vivos trust, or a joint bank account reserving in terms or in effect a life interest, and no creditor could reach the interest of the donee, remainderperson or surviving tenant so created (26 USC 6331, 42 USC 407, 42 USC 659).*

8. SOCIAL SECURITY AND PUBLIC WELFARE—BENEFITS—CREDITORS' RIGHTS.

*Social security payments sustain not only the recipient but also his dependents; a characterization of the exemption of benefits from the claims of creditors as personal to the recipient so that it dies with him ascribes to Congress a limiting purpose nowhere found in the Social Security Act and at odds with its general purpose (42 USC 407).*

9. SOCIAL SECURITY AND PUBLIC WELFARE—BENEFITS—CREDITORS' RIGHTS—CONFLICT OF LAWS.

*Congress, in enacting an exemption of social security benefits from the claims of creditors, necessarily created conflict between that Federal law and state law allowing persons to assign their property and creditors to proceed against the property of a debtor (42 USC 407).*

**Frank J. Kelley,** Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *E. David Brockman,* Assistants Attorney General, for plaintiff.

*I. Goodman Cohen (Charles E. Kovsky,* of counsel) for defendants.

COLEMAN, J. Mrs. Jeanette Vary spent the last three years of her life as a ward of the state at Northville State Hospital. It is agreed that she died owing the state approximately $20,000 for the

care she had received. One asset in her estate is a bank account containing approximately $5,500, accumulated from benefits paid to her during her lifetime pursuant to subchapter II of the Social Security Act.[1] The state has filed a valid claim against her estate and wishes to satisfy this claim in part from the accumulated benefits in the bank account.[2]

The issue is whether these benefits are exempt from the state's claim because of 42 USC 407, which provides *inter alia:*

" * * * none of the moneys paid or payable or rights existing under this subchapter [subchapter II] shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

The lower courts disagreed as to whether the benefits are exempt. The probate court found they are. The circuit court agreed. However, the Court of Appeals reversed[3] holding that paid "social security funds remaining constructively in decedent's hand at the time of death are a general asset of the estate. As such, the funds are available to pay proper administration expenses and may be reached by creditors who have timely filed claims with the probate court. MCLA 702.95; MSA 27.3178(165)".

We affirm.

## I—PURPOSE OF SOCIAL SECURITY ACT

A purpose of the Social Security Act as an-

---

[1] 42 USC 401, *et seq.* (Federal Old Age, Survivors and Disability Insurance Benefits).

[2] The other assets in Mrs. Vary's estate are not worth enough to satisfy the state's claim.

[3] *In re Vary Estate,* 65 Mich App 447; 237 NW2d 498 (1975).

nounced in 42 USC 301 is to enable "each State, as far as practicable under the conditions in such State, to furnish financial assistance to aged needy individuals".

The parties agree and the Court of Appeals holds that so long as Jeanette Vary lived, her accumulated social security benefits generally could not be diverted by legal process to creditors.[4]

The basic question is whether the personal character of social security payments ends at the death of the person for whose care and maintenance they are made or whether the payments retain the same protected character after death as before.

Inherent is the question of whether there is a conflict between Federal social security legislation and state legislation regarding estates of decedents.

This is a case of first impression in Michigan.

## II—FEDERAL CASE LAW

The United States Supreme Court has considered only the disposition of accrued social security moneys during the life of the beneficiary. However, some of those cases cast light upon the purpose of the act and upon that elusive legal concept known as the determination of "legislative intent". Because the clear wording of the act need suffer no further exception in order to reach the conclusion herein, we consider "legislative intent" in conjunction with the Legislature's words.

In finding the social security act constitutional, Justice Cardozo observed for a unanimous Court:

---

[4] The only two exceptions in the Social Security Act are inapplicable. They relate to tax claims of the Internal Revenue Service and to child support and alimony.

"The hope behind this statute is to save men and women from the rigors of the poor house as well as from the haunting fear that such a lot awaits them when journey's end is near." *Helvering v Davis,* 301 US 619, 641; 57 S Ct 904; 81 L Ed 1307 (1937).

Throughout subsequent cases, the purpose of the act is stated consistently in different words.[5]

Our Court of Appeals acknowledged that if there was a conflict between Michigan law on disbursement of an estate and the Social Security Act, the latter would control. However, we should not create a conflict where there is none. Because social security benefits are to protect recipients "from some of the hardships of existence", it would "not comport with the philosophy of the Social Security act" to allow creditors to take those benefits while the individual lives. But in Mrs. Vary's case, there was "no use to which the funds would be put that will aid * * * in meeting the barest essentials of *life*". (Emphasis in original.) The Court said that although the benefits "retain their distinctive character in a traceable bank account, once they pass to the estate of the recipient they lose that characteristic".

A case upon which the Court of Appeals relied was *Philpott v Essex County Welfare Board,* 409 US 413; 93 S Ct 590; 34 L Ed 2d 608 (1973). An

---

[5] *See Social Security Board v Nierotko,* 327 US 358, 364; 66 S Ct 637; 90 L Ed 718 (1946): "The purpose of the federal old age benefits of the Social Security Act is to provide funds * * * for the decent support of the elderly workmen who have ceased to labor". *United States v Silk,* 331 US 704, 711; 67 S Ct 1463; 91 L Ed 1757 (1947), which states that the underlying purpose of the act is "the protection of its beneficiaries from some of the hardships of existence". *Delno v Celebrezze,* 347 F2d 159 (CA 9, 1965): "The general purpose of old-age, survivor and disability insurance provision * * * is to protect workers and their dependents from the risk of loss of income due to the insured's old age, death or disability." *Coy v Folsom,* 228 F2d 276, 279 (CA 3, 1955): "Old-age benefits are clearly intended to provide funds currently necessary to enable the insured to live."

individual receiving state welfare benefits was awarded retroactive social security benefits. The state sought to reach the money. The Court said because the funds were on deposit and readily withdrawable, they "retained the quality of 'moneys' within the purview of § 407". The recipient was alive and subject to personal needs.

The Court likened that case to *Porter v Aetna Casualty & Surety Co,* 370 US 159; 82 S Ct 1231; 8 L Ed 2d 407 (1962), which involved veterans' benefits deposited in an account in a Federal savings and loan association. The statute rendered payments "due or to become due * * * exempt from the claim of creditors, and * * * not * * * liable to * * * any legal or equitable process whatever, either before or after receipt by the beneficiary".

In *Porter,* the Court reviewed the case law involving veterans' exemptions. It had been held that benefits lost their exempt quality when converted into permanent investments.[6] Bank deposits were still exempt if they "remained subject to the demand and use as the needs of the veteran for support and maintenance required".[7] However, negotiable notes and United States bonds purchased with benefit payments were not exempt.[8]

Applying case law to the account in *Porter,* the Court said it "appears clear to us that the savings and loan deposits here, rather than being investments, are the only funds presently available to meet petitioner's needs". The legislation should "protect funds granted by the Congress for the maintenance and support of the beneficiaries". The veteran should be able to select a safekeeping

---

[6] *See Trotter v Tennessee,* 290 US 354; 54 S Ct 138; 78 L Ed 358 (1933).

[7] *See Lawrence v Shaw,* 300 US 245; 57 S Ct 43; 81 L Ed 623 (1937).

[8] *See Carrier v Bryant,* 306 US 545; 59 S Ct 707; 83 L Ed 976 (1939).

method "provided the benefit funds * * * are readily available as needed for support and maintenance".

All the parties to our case agree that the state could not collect by legal process from Mrs. Vary's social security benefits while she was alive. All agree that *Philpott,* as a minimum, provides this protection.

In *Beers v Federal Security Administrator,* 172 F2d 34, 36 (CA 2, 1949), the Court said in applicable part:

"Hence checks issued to him pursuant to certification are freely transferable by him, and on his death pass by operation of law to his executor or administrator."

Defendants argue that *Philpott* overruled *Beers*[9] *sub silentio.* However, the *Philpott* court did not consider or discuss in any part the nature of accumulated social security funds after death of the beneficiary. *Philpott* is instructive of the legislative purpose, but does not speak to our issue. However, defendants argue that social security benefits are a *res* which does not change its protected personal characteristic even after death of the beneficiary. We find it presumptuous to read into *Philpott* an unstated extension of the stated legislative object. Such an extension would go beyond the personal protection of "aged needy individuals".

The protection, being personal to the recipient, dies when that person dies and it no longer inures to his or her benefit.

---

[9] *Also see Gardner v Ewing,* 88 F Supp 315 (SD Ohio, 1950), *aff'd* 185 F2d 781 (CA 6, 1950), *reversed on other grounds,* 341 US 321; 71 S Ct 684; 95 L Ed 968 (1951).

### III—MICHIGAN CONCERNS

In fact, the interpretation urged by defendants might well inure to the disadvantage of the living beneficiary. Access of the "aged needy" individual to credit or to contractual relationships involving the payment of money could be diminished were there no possibility of collecting just debts even from a decedent's estate when remaining funds, if any, could no longer assist the now deceased person *(e.g.,* extended medical care, a loan to pay taxes on the home, a convenient charge account could well be made unlikely should we adopt that interpretation).

According to defendants' theory, it also would appear that an estate consisting of accumulated social security benefits might not be probatable under existing law partially because no funds could be diverted for costs required by law. If the social security funds were commingled with other funds, another problem would arise in differentiating which was "protected" and which was not. Payment of some state and local taxes, in addition to other lawful debts, would be precluded.

We cannot attribute to the Legislature such carelessness or such callousness.

The Court in *Recor v Commercial & Savings Bank of St Clair,* 142 Mich 479; 106 NW 82 (1905), found similar concerns. The plaintiff had a three-fourths interest in a barge. The defendant's husband owned the remaining fourth. When the husband died, plaintiff sued the wife on an indebtedness concerning the barge. The moneys available to the wife were proceeds from a benefit certificate. A statute said the "money * * * to be paid" under such a certificate "shall not be liable * * * to pay any debt or liability * * * of any beneficiary". The

trial court said the wife's money was exempt, but this Court reversed.

We said if the trial court were sustained, "the entire amount of money paid beneficiaries [would] be removed from being subjected to taxation or legal process". The Court did "not think the statute [would] bear such an interpretation." Certainly, if the Legislature intended "to make so important and unlimited an exemption, it would have used language indicative of such intention".

We think the same reasoning applies here. If the Congress intended to exempt benefits such as paid to Mrs. Vary from legal process even when the recipient died, it would have said so or would have used different wording. Both *Philpott* and *Porter* indicate that such benefits are for support of living people with continuing needs. Exemption is a protection that does not survive the individual. It is a personal protection which dies with the beneficiary.

The director of the Social Security Administration agrees with this position. In a letter to the Michigan Revenue Commission, the director noted the trial court decision holding that the state could not recover from Mrs. Vary's estate. He wrote:

"However, it is the view of the Social Security Administration that § 207 of the Social Security Act and the *Philpott* case, relied upon by the Michigan court, apply to accrued social security benefits being conserved only by (or on behalf of) a *living* beneficiary. The Social Security Administration does not read § 207 to protect the benefits of a *deceased* worker from legal process and does not agree that the *Philpott* decision must *necessarily* be read to protect the estate of a *deceased* beneficiary from the claims of creditors. * * * It is true that in *Philpott* the United States Supreme Court used very broad language * * * , but it should be borne in mind

that the court had before it a case in which benefits were being conserved for a *living* beneficiary. The clear purpose of § 207 was to assure that social security benefits are available for the support of the beneficiary on whose behalf they are paid. That purpose can no longer be served after the beneficiary has died." (Emphasis in original.)

The decedent's spouse and dependents are not abandoned by the Social Security Act. Another section provides them benefits. They are placed in a better position than the spouse and dependents of a decedent not receiving social security benefits.

## IV—STATUTORY WORDING

Although it might be rationalized that the goods and services of this proven creditor were provided to assist the living beneficiary and therefore should be paid, this rationale evades the issue and would resolve only one portion of the dilemma.

Therefore, we look to the stated object of the Social Security Act and conform the wording of 42 USC 407 to it.

We are persuaded that a simple, straightforward interpretation permits not only a logical and ethical conclusion, but is necessary to avoid convolution inimicable to the intent to protect the needy and aged person.

The words "none of the moneys paid or payable or rights existing" under subchapter II refer to moneys and rights of living persons entitled to receive the designated funds. Whether the funds were saved, spent or given away is not important. The section goes on to mandate protection of those funds from "execution, levy, attachment, garnishment" or "the operation of any bankruptcy or insolvency law". All of the actions named are in

terms commonly employed regarding living persons. The words "or other legal process" must be interpreted as consistent with the named actions at law. There is no language anticipating death.

Further, the Federal act in no way purports to do with state law other than to provide for possible payment of moneys which were due the living person into the "estate" of the now deceased. It is consistent with the wording of the act to find that Congress intended the state law to apply in the event of an estate subject to probate.

## V—Conclusion

The object of the Social Security Act "to furnish financial assistance to aged needy individuals" is consistent with the clear wording of 42 USC 407 which seeks to protect those individuals by prohibiting named actions (and other legal process) commonly available against living persons. The phrase "and other legal process" must be interpreted in context with the remainder of the statute, all of which refers to moneys accrued to the benefit of an individual while alive and actions commonly available against the living.

*Philpott, supra,* may be all-encompassing as to legal process directed against deposits of a living beneficiary, but neither the facts of the case nor the wording of that Court refer to accumulated social security moneys after death. To strain the meaning so as to "protect" such funds after death leads to absurdities, conflict of state and Federal laws and injustice not only to those who might have extended needed credit (and others), but to the social security recipient who could anticipate a curtailment of credit upon such an interpretation.

We do not ascribe to the *Philpott* Court nor to the Congress such an intent.

Social security is imbued with a personal characteristic which dies with the beneficiary. Thereafter, if any funds pass into an estate for probate as did Jeanette Vary's, they are subjected to state law.

We would not create a conflict where there is none.

The Court of Appeals is affirmed. There are no costs, this having been a public question.

KAVANAGH, C. J., and WILLIAMS, FITZGERALD, and RYAN, JJ., concurred with COLEMAN, J.

LEVIN, J. Jeanette Vary spent her last years at Northville State Hospital where she incurred charges of $23,450. A statute authorizes the state to seek reimbursement. The assets of her estate were a home worth $10,000–$12,000 and $5,500 in social security payments accumulated in a bank account by her guardians, Susie Ivy and I. Goodman Cohen.

The issue is whether the accumulated social security payments are exempt from the claims of Vary's creditors under the provisions of a Federal statute.

The United States Supreme Court, construing this provision, reversed a decision of the New Jersey Supreme Court which allowed a county welfare board to reach the proceeds of disability benefits, paid under the Social Security Act, which had been deposited by the recipient's trustee in a bank account. *Philpott v Essex County Welfare Board,* 409 US 413, 416; 93 S Ct 590; 34 L Ed 2d 608 (1973).

The Court referred to analogous exemptions for

veterans' benefits and its earlier decision[1] that such "benefits deposited in a savings and loan association on behalf of a veteran retained the 'quality of moneys' and had not become a permanent investment".[2]

The probate judge and the circuit judge found that the accumulated social security payments were exempt under the Federal statute. The Court of Appeals reversed, distinguishing *Philpott* on the ground that here the recipient is dead while the recipient in *Philpott* was alive, and therefore allowing the state to recover will not cause any deprivation to the person Congress sought to protect.[3]

While it may be reasonable, as the state argues and this Court holds, to terminate the exemption upon the recipient's death, there is "no token of a purpose"[4] in the language employed by Congress

---

[1] *Porter v Aetna Causualty & Surety Co,* 370 US 159, 161–162; 82 S Ct 1231; 8 L Ed 2d 407 (1962).

[2] In *Trotter v Tennessee,* 290 US 354, 356; 54 S Ct 138; 78 L Ed 358 (1933), the Court held that where veterans' benefits were invested in real estate they "lost the quality of moneys" and thereby were converted into nonexempt "permanent investments". Subsequently, benefits deposited in bank accounts were held to be exempt, *Lawrence v Shaw,* 300 US 245; 57 S Ct 443; 81 L Ed 623; 108 ALR 1102 (1937), but funds used to purchase negotiable notes and United States bonds were ruled nonexempt because "held as investments", *Carrier v Bryant,* 306 US 545; 59 S Ct 707; 93 L Ed 976 (1939). In *Porter, supra,* the funds were deposited in a savings and loan association.

[3] Judge Bronson dissented:

"As the majority points out, both the probate court and the circuit court found *Philpott v Essex County Welfare Board,* 409 US 413; 93 S Ct 590; 34 L Ed 2d 608 (1973), to be controlling here. The basis for that decision was set forth in the well-reasoned opinion of Wayne County Circuit Court Judge Blair Moody, Jr.:

" 'The fact that this case involves the estate of a deceased, whereas in *Philpott* the question involved an individual still living, is a difference without significance in view of the broad language of the Federal Act. It speaks of "monies paid or payable" irrespective of the recipient. Such broad language did allow no differentiation as to whether the eventual recipient was then alive or deceased.'

"I agree and vote to affirm." *Department of Treasury v Ivy,* 65 Mich App 447, 453–454; 237 NW2d 498 (1975).

[4] *Trotter v Tennessee, supra,* p 357.

so to limit the extent of the exemption.

I

The statute reads:

"The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." 42 USC 407.

The first clause is a limitation on the power of the recipient: his right to any future payment "shall not be transferable or assignable".

The second clause is a limitation on the rights of creditors: "none of the moneys paid or payable * * * shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law".[5]

No creditor, including the state *(Philpott),* may use legal process to reach "moneys paid or payable * * * under this subchapter".

We all agree that creditors cannot complain of the recipient's use, misuse or nonuse of the moneys. As stated by this Court, the funds are protected whether "saved, spent or given away". The limitation of the second clause is operative without regard to whether the recipient uses the money sensibly, gives it away or squanders it.

---

[5] If the state, consistent with state law and other Federal law, can condition admission to a state institution and continued maintenance in the institution on actual payment to the state of social security benefits, it might effectively reach those benefits without resort to "legal process". *See Philpott v Essex County Welfare Board,* 409 US 413, 416; 93 S Ct 590; 34 L Ed 2d 608 (1973).

.

The exemption continues, apart from exceptions stated in other legislation,[6] as long as the payments retain the quality of moneys and until permanently invested. A recipient may, thus, give the moneys to a dependent or other person. He may create an inter vivos trust or a joint bank account reserving in terms or in effect a life estate, and no creditor could reach the interest of the donee, remainderperson or surviving tenant so created.

This Court's construction, treating the exemption as coterminous with the life of the recipient, discourages frugality and encourages well-advised debtors to make inter vivos donative transactions to protect accumulated benefits from the claims of creditors.

The carefully-written letter from the Director of the Social Security Administration to the Michigan revenue commissioner does not reach the question before us.[7] The question is not whether the guardians might properly have used ("should" have used) the accumulated funds to reimburse the state but whether they *must* use the funds to pay this debt.

This Court's coterminous construction is based on the assumption that social security "is imbued with a personal characteristic which dies with the beneficiary".[8] This ignores that social security pay-

---

[6] 26 USC 6331 (claims of the Internal Revenue Service); 42 USC 659 (child support and alimony).

[7] The letter states that it is the "policy" of the Social Security Administration that reasonable charges for care and maintenance of an institutionalized beneficiary "should be paid" where other personal needs have been met; the representative payee "should" give highest priority; a payee is "requested" to be aware, etc.; the payee "should" allot a reasonable share. "Should" does not mean "must".

[8] This Court states that the "basic question is whether the *personal* character of the social security payments ends at the death of the person for whose care and maintenance they are made" and concludes that "[t]he protection, being *personal* to the recipient, dies

ments sustain not only the recipient but his or her dependents.[9] Accumulations are likely to represent a reduction in the level of expenditure by and for dependents as well as the recipient.

In preserving accumulations against the claims of creditors, the exemption protects dependents as well as the recipient. The characterization of the exemption as personal ascribes to Congress a limiting purpose nowhere found in the Social Security Act and at odds with its general purpose.

There is as much reason to believe that Congress intended that accumulations of frugality would be available for the continuing needs or sustenance of those who survive the recipient, who often will have been sustained by such payments, as there is to believe that Congress intended that the relatively small amounts ordinarily accumulated must be used to pay the recipient's creditors.

The Court of Appeals, recognizing that in another case a dependent of the social security recipient might have need for the funds, declared: "[T]here is nothing in the record to indicate that

when that person dies and it no longer inures to his or her benefit" (emphasis supplied).

[9] While the primary purpose of social security is to assist the aged or disabled recipient, social security payments assist not only the recipient but also his dependents.

The act provides for additional allowances for the recipient's spouse and children which, pursuant to regulations, may be included in the principal recipient's check or in a separate check issued either to the principal recipient or the dependent. The statutory allocation of benefits should not be construed as creating separate funds with coterminous exemptions so that upon the death of spouse, parent or child creditors may enforce their claims in preference to the survivors.

Also, there are persons who may in fact be dependent on the recipient who are not eligible for additional allowances: the recipient's "roommate", his or her children over 18 and not attending school, children over 22 even if in school, children of any age who are married, legitimate or illegitimate grandchildren, siblings and their children, aunts and uncles and grandparents.

these funds will assist anyone dependent on the decedent for their support in meeting the bare necessities of life." *Department of Treasury v Ivy,* 65 Mich App 447, 452; 237 NW2d 498 (1975).

The issue would be far clearer if Jeanette Vary had left a surviving spouse, dependent parent or child.[10] The absence of dependents in this case facilitates the coterminous construction; it will be difficult to limit the line so drawn to cases where the recipient has no survivors. Having said that the exemption is "personal" to the recipient and ends upon death, it will be difficult to explain why dependent spouses, parents, children or other heirs should have priority over the claims of creditors.[11]

## II

Stating the issue in terms of conflict between Federal and state law suggests that such conflict is to be avoided. It is, however, the essence of such an exemption to create conflict between the Federal law establishing the exemption and state law allowing persons to assign their property and creditors to proceed against a debtor's property. In enacting this exemption Congress necessarily created conflict between Federal and state law.

The argument that the coterminous construction will encourage the extension of credit to the aged needy hypothesizes that creditors extend credit to aged persons on the tripartite assumption that

[10] "The general purpose of old-age, survivor and disability insurance provisions * * * is to protect workers and their dependents from the risk of loss of income due to the insured's old age, death or disability." *Delno v Celebrezze,* 347 F2d 159, 161 (CA 9, 1965).

[11] Limiting the exemption will encourage creditors to seek other limitations. If the exemption is "personal", designed to protect moneys paid for the "care and maintenance" of the recipient, creditors may seek to question dispositions of the funds during the lifetime of the recipient on the ground that the disposition is not compatible with the care and maintenance purpose of the exemption.

debtors accumulate social security payments, and the accumulations will not be expended during the recipient's lifetime, and creditors are willing to wait until some indeterminate time in the future when what remains of the accumulations becomes available upon the recipient's death to pay their claims. There is no reason to suppose that credit is extended on such a tenuous basis.

It has also been suggested that the exempt funds might be commingled with nonexempt funds, but that can occur during the lifetime of the recipient.

If the recipient is able to accumulate social security payments there are likely, as here, to be sufficient other assets to cover the probate and other costs of transferring the funds.

I would reverse the Court of Appeals and remand to the probate court for further proceedings consistent with this opinion.

BLAIR MOODY, JR., J., took no part in the decision of this case.